**UNITED STATES DISTRICT COURT
NORTH DIVISION OF CALIFORNIA SAN
JOSE DIVISION**

DEVINDA FERNANDO, VADIM TSIGEL
on behalf of themselves and all others
similarly situated and on behalf of the
general public of the United States,

        Plaintiffs,

    v.

eBAY, INC., a foreign corporation,
PAYPAL, INC., a Delaware corporation

        Defendants.

Civil Action No.

**CV 10-01668**

ADR

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

PVT

FILED

2010 APR 19 P 1:44

E-filing

Devinda Fernando ("Plaintiff FERNANDO") and Vadim Tsigel, ("Plaintiff TSIGEL"), collectively Plaintiffs, complaining of the Defendants PAYPAL and eBAY ("Defendant PAYPAL, Defendant eBAY, jointly as Defendants"), by and through their attorneys, MARINA TRUBITSKY & ASSOCIATES, PLLC, based on their individual experiences and the investigation of their counsel, and upon information and belief, respectfully allege on behalf of the proposed Plaintiff Class defined herein, and on behalf of the general public, as follows:

**NATURE OF THIS ACTION**

1. This is an action for damages in excess of $75,000.00, exclusive of costs, interest, and attorney's fees and for preliminary and permanent injunctive relief, based on activities constituting violation of Section III of Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) and violations of the Electronic Funds Transfer Act ("EFTA").

- 1 -

2.   This consumer class action is brought by Plaintiffs FERNANDO and TSIGEL on their own behalf and on behalf of the class of persons similarly situated to them. Such class of persons became customers/clients of Defendants during the period prior to the filing of this lawsuit through the date of the hearing on this Complaint. Defendants continuously engaged in conduct that directly violates Section III of Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) and have thus continued to violate the Electronic Funds Transfer Act ("EFTA").

3.   Specifically, Defendants have failed to send Plaintiffs and the members of their Class, throughout the relevant class period, EFTA's error resolution procedures and a link to the "Electronic Fund Transfer Rights and Error Resolution Policy" section of the Defendants' user agreement. This conduct violates Section III A(1) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002).

4.   Further, Defendants failed to send Plaintiffs and the members of their class, throughout the relevant class period, periodic statements pursuant to EFTA (15 U.S.C. §1693d(c)). This violates Section III A(2) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002).

5.   Additionally, when Plaintiffs and the members of their class, throughout the relevant class period, reported valid errors to Defendants, and when Defendants failed to complete their investigation within 10 days, Defendants than failed to provisionally credit Plaintiffs' accounts. This conduct violates Section III B(4) of the Injunctive

Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002).

6.    Finally, Defendants, upon determining that an error really did occur, have failed to properly credit Plaintiffs' and the members of their Class, throughout the relevant class period, accounts within one business day of completing the investigation. This violates Section III B(7) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002). The above described violations have been part of a continuous scheme by the Defendants to avoid abiding by the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) and to continue violating the EFTA as well as various terms contained within Defendants' own User Agreement.

## JURISDICTION AND VENUE

7.    <u>Jurisdiction</u>: This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(d)(2) and (d)(6), commonly known as the "Class Action Fairness Act", or "CAFA", because there is diversity of citizenship, there are in excess of one hundred putative class members, and the claims of individual class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000.00 ("five million dollars"), exclusive of interest and costs.

8.    <u>Venue</u>:  Venue is proper in this District under 28 U.S.C. Section 1391(b) and (c).  A substantial part of the events and conduct giving rise to the violations of law complained of herein occurred in or emanated from this District.   In addition, Defendants continue to conduct regular business with consumers in this District.

**THE PARTIES**

9.    That at all times hereinafter mentioned, Plaintiff FERNANDO has been residing at 125 Fifth Avenue, Apartment 9E, Pelham  NY  10803.  Plaintiff FERNANDO opened an account with Defendant PAYPAL on or about October 15, 1999.

10.   That at all times hereinafter mentioned, Plaintiff TSIGEL has been residing at 2432 East 28th Street, Brooklyn NY  11235.  Plaintiff TSIGEL opened a PayPal account with Defendant PAYPAL approximately five years ago.

11.   That at all times hereinafter mentioned, Defendant PAYPAL was and still is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and has its primary place of business at 2211 N First Street, San Jose, California 95131-2021 and which is doing business in the State of New York.

12.   Defendant eBAY is the leading provider of online auction services, where sellers place certain goods for sale, and buyers can purchase them through an online bidding process. eBAY utilizes services of its in-house payment transmitter PAYPAL, a wholly-owned subsidiary of eBAY, for execution of its online transactions. This utilization by eBay makes PAYPAL a widely popular payment transmitter in the cyber marketplace.

13.   PAYPAL and eBay do business in the State of New York through their websites, respectively www.paypal.com and www.ebay.com. PAYPAL's payment system employs the existing financial infrastructure of bank accounts and credit cards, but permits individuals and businesses (particularly small businesses) to send and receive online payments using only PAYPAL as an intermediary.

**FACTUAL ALLEGATIONS**

## DEFENDANT PAYPAL'S OPERATION

14. Defendant PAYPAL is an online payment system providing eCommerce services. It is a wholly-owned subsidiary of Defendant eBAY. Defendant PAYPAL has over 12 million registered users, including more than 2.2 million business accounts. Defendant PAYPAL states that it is "the leading payment network for on-line auction websites, including eBay" and that its account base grows by an average of 18,000 accounts per day. Business or consumer clients with a valid e-mail address can send and receive online payments via Defendant's system. Defendant represents that said clients can accept or send money "securely, conveniently and cost effectively" and can "send payments for free." Said clients can transfer money to a recipient by entering an email address of the recipient, the payment amount, and funding source (credit card, bank account, or PAYPAL account). If recipient does not have a PAYPAL account, said recipient receives email notification to open an account with Defendant and gain access to the payment. From such transactions, Defendant generates revenues through transaction fees and interest derived from holding clients' funds.

## DEFENDANT PAYPAL'S TELEPHONE ABUSE OF CLIENTS

15. Notwithstanding the *Comb v. PayPal*, Inc., 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement, Defendant PAYPAL continues to violate the Electronic Funds Transfer Act, Defendant's own User Agreement, and said settlement.

16. Defendant PAYPAL is understaffed. It is thus unable to respond to the demands of its abundant customer base. To manage this issue, Defendant developed a scheme where it placed artificially created barriers between itself and its clients resulting

- 5 -

in a lack of access to quality customer service. The Better Business Bureau pulled Defendant's seal of approval in 2001 because Defendant had a backlog of more than 100,000 unanswered complaints.

17. As part of Defendant PAYPAL's scheme to create artificial barriers between itself and its clients, Defendant intentionally makes its customer service phone numbers difficult to find. Therefore, clients would be deterred from calling and seeking help. Defendant's customers were forced to created web sites that dispense Defendant's headquarter and customer service phone numbers.

18. Once Defendant PAYPAL's clients actually do locate a customer service number to report a complaint or issue, clients have to call multiple times to speak to a live person rather than a machine. Defendant's staff places them on hold for excessively long periods of time. Further, Defendant's representatives transfer clients from one representative to another, forceing the client to begin his or her story anew. Defendant's clients have often complained that Defendant's representatives are rude and combative, that they refuse to answer specific questions, and that they hang up in the middle of calls. Defendant's representatives provide responses that are "canned" and thus not helpful or specific to the problem the particular client is calling about. Said representatives have been known to provide non-operational facsimile numbers, require clients to repeatedly fax the same information and then claim that it was never received, and refuse clients access to managers or other authority figures.

**DEFENDANT PAYPAL'S ELECTRONIC ABUSE OF CLIENTS**

19. Defendant PAYPAL's position is that clients should report their issues via email and not telephonically, thus making issue processing quicker and less expensive for

Defendant. However, clients have complained that Defendant is not responsive to email inquiries. Specifically, clients complain that Defendant fails to respond to email inquiries in a timely fashion and that responses are form-letter format which is not responsive to the specific issues raised by the client and which do not provide a phone number or address so that consumers may follow up by phone or direct mail, if necessary.

**DEFENDANT PAYPAL'S ILLEGAL ACCOUNT TEMPERING AND INVESTIGATION PRACTICES IN VIOLATION OF INJUNCTIVE RELIEF PORTION OF *COMBS V. PAYAL, INC.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002)**

20. Defendant PAYPAL's clients complain that, while Defendant conducts investigations concerning erroneous transactions, Defendant refuses to provide any details or explanation concerning the nature of the investigation or its findings, and refuses to allow the customer to appeal the results of the investigation. Customers who send inquiries by regular mail complain that their letters go unanswered.

21. Further, Defendant PAYPAL, without notice or warning to its clients, erroneously and unnecessarily restricts, freezes or closes customer accounts because of "suspicious activity." Defendant then fails to provide any details or explanations concerning the so-called "suspicious activity" and ignores clients' requests to do so. This directly violates Section III C(3) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement, which states that "PayPal will respond within five business days to a customer's first request for information in connection with an account limitation...PayPal will provide the customer with copies of documents it relied on in making its decision to limit access to the customer's account."

-7-

22.  Defendant PAYPAL does not allow affected clients to cancel their account and recover their money.  Defendant states that restricted or frozen accounts cannot be cancelled.  This directly violates Section III C(4) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement which states that "PayPal will make any funds remaining in a limited account available to customers within 180 days after the account's access is limited."

23.  Clients whose accounts are frozen or restricted have to provide private personal and financial information to Defendant, as well as complete and notarized affidavits. Thus, it is exceedingly difficult for clients to recover their money from Defendant.  This directly violates Section III C(5) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement which states that "PayPal will not request documents from a customer in connection with an account limitation for the purpose of deterring a customer from asserting his or her rights under the EFTA."

24.  Defendant PAYPAL profits from above described practices.  Defendant generates interest on clients' money while holding it.  Thus, the longer a client's account is restricted or frozen, the more interest Defendant can make on the client's assets. Further, many clients give up trying to recover their money and thus Defendant PAYPAL can make interest on that amount indefinitely while the affected clients continue to suffer economic losses.


### CLASS REPRESENTATIVE FERNANDO'S EXPERIENCE

25.  Plaintiff FERNANDO opened an account with Defendant PAYPAL on or about October 15, 1999.

**A.) Defendant PAYPAL's Failure to Comply with Section III A (1) of the Injunctive Relief Portion of Settlement**

26. The Section III A(1) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will send customers notice of the EFTA's error resolution procedures and a link to 'Electronic Fund Transfer Rights and Error Resolution Policy' section of the User Agreement at least once per calendar year."

27. From Plaintiff FERNANDO's date of registration with Defendant PAYPAL and until now, Defendant PAYPAL has not provided Plaintiff FERNANDO with an annual notice of the EFTA's error resolution procedures along with a link to the "Electronic Fund Transfer Rights and Error Resolution Policy" section of the PayPal User Agreement.

28. As Defendant PAYPAL failed to provide Plaintiff FERNANDO with annual notice of EFTA's error resolution procedures, Defendant PAYPAL has violated Section III A(1) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

**B.) Defendant PAYPAL's Failure to Comply with Section III A (2) of the Injunctive Relief Portion of Settlement**

29. From Plaintiff FERNANDO's date of registration with Defendant PAYPAL and until now, Defendant PAYPAL has not provided Plaintiff FERNANDO with a periodic statement pursuant to EFTA (15 U.S.C. 1693d(c)).

30. Section III A(2) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will send customers

a periodic statement pursuant to the EFTA (15 U.S.C. 1693d(c)).  Such statements shall

be sent on a monthly basis if the customer's account is active and on a quarterly basis if

not.  PayPal will deliver such notice via a link embedded in an email addressed to the

primary email address listed on the customer's account."

31.  As Defendant PAYPAL failed to provide Plaintiff FERNANDO with a periodic

statement pursuant to the EFTA (15 U.S.C. § 1693d(c)), Defendant PAYPAL has

violated Section III A(2) of the  Injunctive Relief portion of the *Comb v. PayPal, Inc.*,

218 F.Supp.2d 1165  (N.D.Cal. 2002) settlement.

**C.) Defendant PAYPAL's Failure to Comply with Sections III B(4) and III B(7) of the Injunctive Relief Portion of Settlement and Unjust Enrichment**

32.  Plaintiff FERNANDO purchased a professional camera through Defendant

eBAY's auction on June 11, 2008.  Plaintiff paid the camera's seller $3,120.00 through

Plaintiff's PAYPAL account.  Plaintiff finally received a box from said seller, on or

about July 11, 2008.  Unfortunately, that box contained a camera that was in a state of

disrepair and was not even the same model as ordered by Plaintiff.

33.  Plaintiff FERNANDO called Defendant PAYPAL's customer service phone

number on or about July 12, 2008.  Plaintiff provided Defendant's representative with (i)

information sufficient to enable Defendant to identify the name and PAYPAL account of

the Plaintiff, (ii) an indication that an error has occurred in connection with the

Plaintiff's account and the amount of such error, and (iii) reasons for Plaintiff's belief

that an error has occurred.  Thus, Plaintiff gave Defendant a valid oral notice of error for

the purposes of EFTA (15 U.S.C. 1693f(a)) and Section III B(1) of Injunctive Relief

portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002)

34. Defendant PAYPAL's representative assisted Plaintiff in opening a dispute and escalating it to a claim. Said representative then informed Plaintiff that $3,120.00 had been successfully held by Defendant pending the investigation.

35. Plaintiff FERNANDO received an email from Defendant PAYPAL, stating that Plaintiff has prevailed in the investigation, on or about July 23, 2008. However, said email stated that $2,000.00, not $3,120.00, would be refunded to Plaintiff's account.

36. Plaintiff FERNANDO called Defendant PAYPAL's customer service phone number to resolve this amount discrepancy. Defendant's representative informed Plaintiff that camera seller's PAYPAL account lacked sufficient funds to reimburse Plaintiff. However, because said seller's account was a "PayPal Confirmed Account" Plaintiff was entitled to $2,000.00 of buyer's insurance.

37. Subsequently, Plaintiff FERNANDO received an email from Defendant PAYPAL stating that Plaintiff shall receive $200.00 as it is the maximum amount refundable under Defendant's default buyer insurance policy. Plaintiff called Defendant's customer service phone number to resolve this issue and ask for the $3,120.00 that Defendant has originally held pending the investigation on or about August 7, 2008. Defendant's representative told Plaintiff that Plaintiff shall not receive more than $200.00 of the default buyer's insurance.

38. To date, Defendant PAYPAL has failed to pay Plaintiff FERNANDO any money, even the $200.00

39. The Section III B(4) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will provisionally credit a customer's account pursuant to the EFTA (15 U.S.C. 1693f(c)) whenever PayPal is unable to complete an investigation of an error within ten (10) days after being notified of an error."

40. Here, Defendant PAYPAL failed to provisionally credit Plaintiff's account within ten days after being notified of an error. Defendant has failed to transfer any money whatsoever to Plaintiff. Thus, Defendant violated Section III B(4) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement

41. The Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that, upon the conclusion of the investigation "if PayPal determines that an error occurred, it shall promptly correct the error, including the crediting of interest where applicable, within one (1) business day of completing the investigation."

42. Here, Defendant PAYPAL acknowledged that Plaintiff FERNANDO reported a valid issue and that Plaintiff won the dispute. However, the error in payment was not corrected and no interest was credited. Plaintiff received no compensation whatsoever and thus Defendant was unjustly enriched. Thus, Defendant violated Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

## CLASS REPRESENTATIVE TSIGEL'S EXPERIENCE REGARDING HIS $1,800 TRANSACTION

43. Plaintiff TSIGEL opened a PayPal account with Defendant PAYPAL approximately five years ago.

**A.) Defendant PAYPAL's Failure to Comply with Section III A (1) of the Injunctive Relief Portion of Settlement**

44. The Section III A(1) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will send customers notice of the EFTA's error resolution procedures and a link to 'Electronic Fund Transfer Rights and Error Resolution Policy' section of the User Agreement at least once per calendar year."

45. From Plaintiff TSIGEL's date of registration with Defendant PAYPAL and until now, Defendant PAYPAL has not provided Plaintiff TSIGEL with an annual notice of the EFTA error resolution procedures along with a link to the "Electronic Fund Transfer Rights and Error Resolution Policy" section of the PayPal User Agreement.

46. As Defendant PAYPAL failed to provide Plaintiff TSIGEL with annual notice of EFTA's error resolution procedures, Defendant PAYPAL has violated Section III A(1) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

**B.) Defendant PAYPAL's Failure to Comply with Section III A (2) of the Injunctive Relief Portion of Settlement**

47. Section III A(2) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will send customers a periodic statement pursuant to the EFTA (15 U.S.C. 1693d(c)). Such statements shall be sent on a monthly basis if the customer's account is active and on a quarterly basis if

not. PayPal will deliver such notice via a link embedded in an email addressed to the primary email address listed on the customer' account."

48. From Plaintiff TSIGEL's date of registration with Defendant PAYPAL and until now, Defendant PAYPAL has not provided Plaintiff TSIGEL with a periodic statement  pursuant to EFTA (15 U.S.C. 1693d(c)). As Defendant PAYPAL failed to provide Plaintiff TSIGEL with a periodic statement pursuant to the EFTA (15 U.S.C. § 1693d(c)), Defendant PAYPAL has violated Section III A(2) of the   Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

**C.) Defendant PAYPAL's Failure to Comply with Sections III B(4) and III B(7) of the Injunctive Relief Portion of Settlement and Unjust Enrichment**

49. Plaintiff TSIGEL, utilizing his PAYPAL account, purchased four separate Apple iPhones on eBay from a single seller for a total of $1,800.00 on June 13, 2008. Plaintiff then utilized Defendant PAYPAL's option to combine multiple purchases from a single seller into one large purchase.

50. Plaintiff TSIGEL initiated a dispute with Defendant PAYPAL against the iPhone seller on June 26, 2008 because no iPhones were delivered to Plaintiff. Plaintiff received an email from Defendant stating that a dispute has been opened, that Plaintiff was communicating with the seller rather than Defendant, and that Plaintiff was not to reply to this email as the mailbox is not monitored. Said email did not contain a customer service phone number, email address, or other alternative means for obtaining assistance from Defendant.

51. Plaintiff TSIGEL, having found Defendant PAYPAL's customer service number on his own, called Defendant on June 28, 2008. Plaintiff provided Defendant's

representative with (i) information sufficient to enable Defendant to identify the name and PayPal account of the Plaintiff, (ii) an indication that an error has occurred in connection with the Plaintiff's account and the amount of such error, and (iii) reasons for Plaintiff's belief that an error has occurred. Thus, Plaintiff gave Defendant a valid oral notice of error for the purposes of EFTA (15 U.S.C. 1693f(a)) and Section III B(1) of Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165 (N.D.Cal. 2002)

52. Defendant PAYPAL's representative instructed Plaintiff TSIGEL how to escalate his dispute to the status of the claim. Plaintiff received an email from Defendant confirming that his dispute was escalated to a claim. Said email once again did not provide any customer service phone number, email address or other alternative means for obtaining assistance from Defendant.

53. Defendant PAYPAL then put a hold on the $1,800.00 payment, making these funds unavailable to both Plaintiff and seller. However, Defendant did not inform Plaintiff of this hold until June 26, 2008.

54. Defendant PAYPAL credited Plaintiff TSIGEL's account for $800.00 on July 10, 2008, but did not notify the Plaintiff that they have done so. Because Defendant PAYPAL did not notify Plaintiff of this transaction upon his account and further because the transaction was not for the original amount held by Defendant but for a lesser amount this is a clear error on the part of Defendant as defined by Section I D(ii) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.,* 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement ("an incorrect electronic fund transfer to or from a customer's PayPal account").

55. On July 11, 2008, Plaintiff received an email explanation of the transfer from Defendant. Said email stated that Plaintiff won his claim and that $800.00 were returned to Plaintiff because the seller's account lacked further funds. No explanation was offered as to the $1,800.00 which Defendant held. No interest was credited to Plaintiff. Due to such conduct, Defendant PAYPAL's actions are in direct violation of 15 U.S.C.S. § 1693f(b).

56. The Section III B(4) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that "PayPal will provisionally credit a customer's account pursuant to the EFTA (15 U.S.C. 1693f(c)) whenever PayPal is unable to complete an investigation of an error within ten (10) days after being notified of an error."

57. Here, Defendant PAYPAL failed to provisionally credit Plaintiff's account within ten days after being notified of an error. Plaintiff was credited an improper amount only after 14 days from the initiation of the investigation. Thus, Defendant violated Section III B(4) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

58. Plaintiff TSIGEL contacted Defendant PAYPAL numerous times between July 11, 2008 and July 31, 2008 regarding the $1,000.00 still owed to him. None of Plaintiff's calls brought any resolution because Defendant's representatives were inconsiderate, uncooperative and unhelpful.

59. Plaintiff TSIGEL received an email from Defendant PAYPAL on August 8, 2008 in which Defendant informed Plaintiff of their resolution of his claim. The email stated that when Plaintiff initiated his PayPal Buyer Protection Tier 200 Dispute on June

26, 2008, Defendant put a hold on the item, making the funds ($1,800.00) unavailable to both Plaintiff and seller. The same email later contradicts itself and states that Defendant attempted to recover $1800.00 from the seller's account. Defendant was unable to do so due to inadequate funds in the seller's account. The email goes on to state that since each of the four iPhones had a PayPal Buyer Protection policy of $200 each, Plaintiff has been credited with $800.00. Email goes on to say that Defendant is attempting to recover the $1,000.00 still owed to Plaintiff and Plaintiff will be notified by email once the recovery is successful.

60. The Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that, upon the conclusion of the investivation "if PayPal determines that an error occurred, it shall promptly correct the error, including the crediting of interest where applicable, within one (1) business day of completing the investigation."

61. Here, Defendant PAYPAL acknowledged that Plaintiff TSIGEL reported a valid issue. However, the error in payment was not corrected and no interest was credited. Plaintiff received no compensation whatsoever and thus Defendant was unjustly enriched. Thus, Defendant violated Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

62. Further, Defendant PAYPAL is unjustly enriched by profiting from the interest accrued on Plaintiff TSIGEL's $1,800.00 which Defendant had on hold. Also, Defendant is unjustly enriched by receiving interest from the remaining $1,000.00 still owed to Plaintiff and by refusing to return said amount to Plaintiff.

## CLASS REPRESENTATIVE TSIGEL'S EXPERIENCE REGARDING HIS $835.00 TRANSACTION

**A.) Defendant PAYPAL's Failure to Comply with Section III B (7) of the Injunctive Relief Portion of Settlement, Violation of Electronic Funds Transfer Ace, and Unjust Enrichment**

63. Plaintiff TSIGEL was involved in another dispute with a seller to whom Plaintiff paid $850 via Plaintiff's PAYPAL account. Plaintiff opened a complaint with Defendant PAYPAL regarding this dispute. Plaintiff provided Defendant's representative with (i) information sufficient to enable Defendant to identify the name and PayPal account of the Plaintiff, (ii) an indication that an error has occurred in connection with the Plaintiff's account and the amount of such error, and (iii) reasons for Plaintiff's belief that an error has occurred. Thus, Plaintiff gave Defendant a valid oral notice of error for the purposes of EFTA (15 U.S.C. 1693f(a)) and Section III B(1) of Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002)

64. Plaintiff TSIGEL was notified by Defendant PAYPAL on July 8, 2008 that the above mentioned complaint was resolved in Plaintiff's favor for $835.00 via Defendant's Item Not as Described resolution process. In violation of 15 U.S.C.S. § 1693f(b), no monies were accredited to Plaintiff's account at the time he time of receiving this notice from Defendant PAYPAL

65. Plaintiff TSIGEL did not receive any monies promised him by Defendant PAYPAL until twenty-four days after receiving notification from Defendant PAYPAL that Plaintiff TSIGEL had won his claim regarding his $835.00.

66. Defendant PAYPAL credited $200.00 back to Plaintiff TSIGEL's account on August 1, 2008 without informing Plaintiff that they have done so or which claim this credit was in reference to. Because Defendant PAYPAL did not notify Plaintiff of this transaction upon his account and further because the transaction was not for the original amount held by Defendant but for a lesser amount, this conduct by Defendant is a clear error on the part of Defendant as defined by Section I D(ii) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement ("an incorrect electronic fund transfer to or from a customer's PayPal account").

67. Defendant PAYPAL sent Plaintiff TSIGEL an email on August 8, 2008 explaining that Not as Described claim which Plaintiff had won is now being completely refunded. Said email stated that Plaintiff had received a partial refund of $200.00 because there were no more funds in the seller's account. Said email also stated that the remaining $635.00 are being refunded to Plaintiff at this time.

68. It took Defendant PAYPAL an additional seven days to refund the remaining amount and notify Plaintiff TSIGEL and to send him notification as to what the refund was for and why Defendant PAYPAL had refunded both the $635.00 and the $200.00 on August 1, 2008.

69. The Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement states that, upon the conclusion of the investigation "if PayPal determines that an error occurred, it shall promptly correct the error, including the crediting of interest where applicable, within one (1) business day of completing the investigation."

70. Here, Defendant PAYPAL acknowledged that Plaintiff TSIGEL reported a valid issue and won his claim. However, the error in payment was not corrected and no interest was credited. Plaintiff was not duly compensated as required by the Injunctive Relief agreement and thus Defendant was unjustly enriched. Thus, Defendant violated Section III B(7) of the Injunctive Relief portion of the *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement.

## CLASS ACTION ALLEGATIONS

71. Plaintiffs bring this action on behalf of themselves and all others similarly situated, as members of a proposed plaintiff class, defined as follows: Excluded from each Class are the Defendants in this action, any entity in which the Defendants have a controlling interest, any employees, officers, or directors of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendant, and the Judge and Magistrate Judge to whom this case is assigned, and their immediate families.

72. The action has been brought and may properly be maintained, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), (2) or (3), and case law thereunder.

73. **Numerosity of the Class** – Fed. R. Civ. P. 23(a)(1): Class members are so numerous that their individual joinder herein is impracticable. The Class includes thousands of customers. The precise number of Class members and their addresses is unknown to Plaintiffs but can readily be determined from inspection of records maintained by Defendants. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

74. **Existence and Predominance of Common Questions of Fact and Law** – Fed.

R. Civ. P. 23(a)(2); 23(b)(3):  Common questions of law and fact exist as to all Class

members.  These questions predominate over the questions affecting only individual

Class members.  These common legal and factual questions include:

a.  whether Defendants failed to make a telephone number and address
    readily available for customers to report erroneous electronic transfers;

b.  whether Defendants electronically transferred funds or held electronically
    transferred funds in an unlawful manner;

c.  whether Defendants notified consumers of their right to request documents
    upon which an investigative decision by Defendants were based;

d.  whether Defendants violated 15 U.S.C. § § 1693 *et seq.*;

e.  whether Defendants violated the Injunctive Relief portion of the *Comb v.
    PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002) settlement;

f.  whether Defendants refused to reimburse consumers for expenses incurred
    as a result of Defendants' erroneous transfer of money;

g.  whether Defendants engaged in unlawful, unfair or fraudulent business
    practices;

h.  whether Defendants were unjustly enriched at the expense of Plaintiffs and
    the members of their Class;

i.  whether Defendants acted negligently, as alleged herein;

j.  whether Plaintiffs and the members of their Class are entitled to restitution
    of all monies acquired by Defendants' from Plaintiffs and the members of

their Class as a result of Defendants' unlawful, unfair or fraudulent business practices;

k.  whether Plaintiffs and the Class sustained damages as a result of Defendants' unlawful conduct, and, if so, what is the appropriate measure of damages; and

l.  the appropriate form of injunctive, declaratory and monetary relief.

75.  **Typicality** -- Fed. R. Civ. P. 23(a)(3):  Plaintiffs' claims are typical of the claims of the Class Members because Defendant failed to provide disclosures or notice to Plaintiffs; used electronic means to transfer money from Plaintiff TSIGEL without his knowledge or consent; and restricted or "froze" money belonging to Plaintiffs.

76.  **Adequacy** – Fed. R. Civ. P. 23(a)(4):  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent.  Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously.  The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

77.  **Superiority** – Fed. R. Civ. P. 23(b)(3):  The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs.  The damages suffered by each individual Class member are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them.  Even if the Class members themselves could afford such individual litigation, this would present potential for inconsistent or contradictory judgments.  Individualized litigation increases delay and

expense to all parties and burdens the court system unnecessarily. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

78.   In the alternative, the Class may be certified under the provisions of Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) because:

    a.   the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendants;

    b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members who are not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    c.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief available with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation Of The Settlement Agreement Reached In Comb v. PayPal, Inc., 218 F.Supp.2d 1165 (N.D.Cal. 2002) )

79.   Plaintiffs incorporate by reference each paragraph set forth above and assert this cause of action on behalf of themselves and behalf of the Class alleged herein.

80.   Under the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), Defendant PAYPAL consented to an injunction requiring certain notification and resolution procedures to be put into place.

81.   In particular, Section III A(1) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will provide customers at the time they open an account with a disclosure pursuant to the EFTA (15 U.S.C. 1693c(a)) that includes a specific telephone number and address for reporting lost/stolen access devices or unauthorized transfers.  A disclosure contained within the "Electronic Fund Transfer Rights and Error' Resolution Policy" section of PayPal's User Agreement... Thereafter, PayPal will send customers notice of the EFTA's error resolution procedures and a link to the "Electronic Fund Transfer Rights and Error Resolution Policy" section of the User Agreement at least once per calendar year.  PayPal will deliver this notice in an email containing a link and addressed to the primary email address listed on the customer's account."

82.   In particular, Section III A(2) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will send customers a periodic statement pursuant to the EFTA (15 U.S.C. 1693d(c)).  Such statements shall be sent on a monthly basis if the customer's account is active and on a quarterly basis if not.  PayPal will deliver such notice via a link embedded in an email addressed to the primary email address listed on the customer's account."

83.   In particular, Section III B(4) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will provisionally credit a customer's account pursuant to the EFTA (15 U.S.C

1693f(c)) whenever PayPal is unable to complete an investigation of an error within ten (10) days after being notified of an error, unless either: (i) PayPal has requested, and not received, written confirmation from the customer pursuant to 15 U.S.C. 1693f(a); or (ii) following an investigation completed under 15 U.S.C. 1693f, PayPal has determined in its discretion that no error occurred."

84. In particular, Section III B(7) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "If PayPal determines that an error occurred, it shall promptly correct the error, including the crediting of interest where applicable, within one business day of completing the investigation."

85. In particular, Section III C(3) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will advise any customer who requests information in connection with an account limitation that any such request must be provided to PayPal through the "report form" link contained in the "Electronic Fund Transfer Rights and Error Resolution Policy" section of PayPal's User Agreement. PayPal will respond within five business days to a customer's first request for information in connection with an account limitation when such request is received by PayPal through the "report form" link contained in the "Electronic Fund Transfer Rights and Error Resolution Policy" section of PayPal's User Agreement. In responding to a customer's first request for information, PayPal will provide the customer with copies of documents it relied on in making its decision to limit access to the customer's account..."

86.   In particular, Section III C(4) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will make any funds remaining in a limited account available to customers within 180 days after the account's access is limited, unless PayPal is prevented from releasing the funds in the account by court order, a request from a law enforcement agency, other state or federal body, or any foreign government or law enforcement agency...."

87.   In particular, Section III C(5) of the Injunctive Relief portion of the settlement reached in *Comb v. PayPal, Inc.*, 218 F.Supp.2d 1165 (N.D.Cal. 2002), states that "PayPal will not request documents from a customer in connection with an account limitation for the purpose of deterring a customer from asserting his or her rights under EFTA."

88.   As described in detail within paragraphs 14-70 of this complaint, Defendants have repeatedly disregarded and violated the above listed provisions.

## SECOND CAUSE OF ACTION

### (For Conversion)

89.   Plaintiffs incorporate by reference each paragraph set forth above and assert this cause of action on behalf of themselves and on behalf of the Class alleged herein.

90.   Defendants have converted for their own use property belonging to Plaintiffs and Class Members through unlawful acts and conduct. The specific sum of each Class Member's money that was converted by Defendants is readily identifiable from information and records in Defendants' possession or control.

91.   Defendants knowingly and intentionally transferred or retained money of subscribers and even non-subscribers of their internet service, including Plaintiffs and the members of their Class.  Defendants thus converted to their own use property belonging to Plaintiffs and members of their Class.

92.   The specific sum of each Class member's money that Defendants converted is readily identifiable from information and records in Defendants' possession or control.

93.   As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiffs and the members of their Class were deprived of the use of their money that was unlawfully converted by Defendants, and are thereby entitled to restoration of their money, along with interest on the money from the date said money was converted by Defendants to the date of judgment, compensatory damages, punitive damages, and other and further relief as set forth below.

**THIRD CAUSE OF ACTION**

**(For Money Had and Received)**

94.   Plaintiffs incorporate by reference each paragraph set forth above and assert this cause of action on behalf of themselves and on behalf of the Class alleged herein.

95.   As a result of their unlawful acts and conduct, Defendants acquired monies from Plaintiffs and the members of their Class which Defendants had no right to retain. The specific sum of money unlawfully acquired from each Class member is readily identifiable from information and records in Defendants' possession or control.

96.   Defendants transferred or retained from subscribers and even non-subscribers of their internet service, including Plaintiffs and the members of their Class, money which

they have no right to retain. Accordingly, Defendants are indebted to Plaintiffs and the members of their Class for money had and received by Defendants.

97. As a direct and proximate result of Defendant's unlawful acts and conduct, Plaintiffs and Class Members were deprived of the use of their money that was unlawfully charged and collected by Defendant, and are therefore entitled to restoration of their money, and other and further relief as set forth below.

## FOURTH CAUSE OF ACTION

### (For Unjust Enrichment)

98. Plaintiffs incorporate by reference each paragraph set forth above and assert this cause of action on behalf of themselves and on behalf of the Class alleged herein.

99. Defendants have received, and continue to receive, a benefit at the expense of Plaintiffs and the members of their Class.

100. Defendants transferred money from and to the PayPal account of Plaintiff TSIGEL and the members of his Class without their knowledge or consent, and improperly froze the PayPal accounts of Plaintiffs and the members of their Class, and thus improperly withheld monies rightfully belonging to Plaintiffs and the members of their Class. Accordingly, Defendants received benefits which they unjustly retained at the expense of Plaintiffs and the members of their Class.

101. As a direct and proximate result of Defendant's unlawful acts and conduct, Plaintiffs and the members of their Class were deprived of the use of their money (that was unlawfully transferred and/or retained by Defendants) and are therefore entitled to restoration of their money, and other and further relief as set forth below.

## SIXTH CAUSE OF ACTION

### (For Negligence)

102. Plaintiffs incorporate by reference each paragraph set forth above and assert this cause of action on behalf of themselves and on behalf of the Class alleged herein.

103. Defendants have an obligation to establish and maintain adequate procedures to avoid the erroneous transfer of funds. Defendants also have a duty to comply with the EFTA as well as other laws related to the electronic transfer of funds. Defendants also had a duty to provide Plaintiffs and the members of their Class with readily available information concerning dispute resolution and to create and maintain adequate procedures to accurately resolve disputes over the transfer of funds.

104. Defendants breached these obligations by not making dispute resolution information readily available for customers and by making it difficult, if not impossible, for customers to resolve disputes with Defendants in an efficient and appropriate manner. Defendants also breached their obligations to Plaintiffs and the members of their Class by failing to establish and maintain adequate procedures concerning the transfer of funds.

105. As a direct and proximate result of Defendants' conduct, Plaintiffs and the members of their Class have been injured in that they have lost the possession and use of Plaintiff's and Class Members' money and have suffered other adverse financial consequences directly caused by Defendant's improper conduct. Plaintiffs and the members of their Class pray for relief as set for below.

WHEREFORE, on behalf of themselves and the Class defined herein, Plaintiffs pray for judgment as follows:

a. For an order certifying the Class and appointing Plaintiffs and their counsel to represent the Class;

b. For an order declaring that Defendants violated the Electronic Funds Transfer Act, as alleged herein;

c. For an order awarding Plaintiffs and the members of their Class treble, statutory and punitive damages, together with interest thereon;

d. For an order awarding Plaintiffs and the members of their Class compensatory damages in an amount which may be proven at trial, together with interest thereon;

e. For an order awarding Plaintiffs and the members of their Class restitution of all monies acquired by Defendants from Plaintiffs, the Class, and the general public, as a result of Defendants' wrongful practices described above;

f. For an order awarding Plaintiff and the members of their Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs;

g. For an order or judgment finding the arbitration provision in Defendants' User Agreement to be unenforceable;

h. For an order imposing a constructive trust upon all monies and assets Defendants have acquired from Plaintiffs and the members of their Class as a result of Defendants' unlawful, unfair, fraudulent, and deceptive practices;

i.  For an order awarding Plaintiff and all other similarly situated individuals equitable and declaratory relief, as the Court deems appropriate; and

j.  For an order awarding such other and further relief as this Court may deem just and proper.

## CERTIFICATION OF INTERESTED ENTITIES TO PERSONS

Pursuant to Civil L.R. 3-16, the undersigned attorney certifies that as of this date, other than the named parties, there is no such interest to report.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all causes of action so triable. Plaintiffs and their class also hereby demand a jury pursuant to the Federal Arbitration Act, 9 U.S.C. § 2 et seq. for those issues regarding arbitration that involve material issues of fact.

DATED:        New York, New York
              April 15, 2010

                           Respectfully submitted,
                           MARINA TRUBITSKY & ASSOCIATES, PLLC


                           By: /s/ Marina Trubitsky, Esq.

                           Marina Trubitsky, Esq.
                           11 Broadway, Suite 861
                           New York, New York 10004
                           Tel.: (212) 732 – 7707
                           Fax: (212) 732 – 7708

*Attorneys for Individual and Representative*
*Plaintiffs Devinda Fernando and Vadim Tsigel*

David Hicks, APLC
David Hicks,
State Bar Numbers: Calif. 053750
P.O. BOX 562
Dunsmuir, CA 96025
(530) 235-0235 (telephone)
(530) 239-4301 (facsimile)