1
2
3
4
5
6                              UNITED STATES DISTRICT COURT
7                          FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                                       OAKLAND DIVISION
9

| | |
|---|---|
| MOISES ZEPEDA, MICHAEL SPEAR, RONYA OSMAN, BRIAN PATTEE, CASEY CHING, DENAE ZAMORA, MICHAEL LAVANGA, and GARY MILLER, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PAYPAL, INC., E-BAY INC., and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No:  C 10-2500 SBA<br><br>**ORDER RE MOTION FOR FINAL APPROVAL AND MOTIONS FOR ATTORNEYS' FEES AND SERVICE AWARDS**<br><br>Related to:<br>No. C 10-1668 SBA<br><br>Dkt. 295, 296, 297, 340 |

10
11
12
13
14
15
16
17
18          This is a putative nationwide class action brought by Plaintiffs Moises Zepeda,

19   Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael

20   Lavanga and Gary Miller (collectively "Plaintiffs") against PayPal, Inc., and its parent

21   entity, eBay, Inc., (collectively "Defendants").  Plaintiffs allege that PayPal improperly

22   handled disputed transactions relating to their user accounts by unilaterally placing holds

23   and reserves thereon without explanation.  PayPal also is alleged to have failed to provide

24   annual error-resolution notices and monthly account statements in violation of the

25   Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq.  The parties have

26   resolved the above-captioned action on a class-wide basis and entered into a Settlement

27   Agreement, as amended ("the Settlement"), which the Court preliminarily approved in a

28   prior order.

The parties are presently before the Court on the following motions:  (1) Plaintiffs' Motion for Final Approval of Amended Class Action Settlement Agreement; (2) Motion for Award of Attorneys' Fees and Reimbursement for Costs and Service Awards, filed by the Lexington Law Group and Quantum Legal LLC ("Class Counsel Fee Motion"); (3) Motion for Attorneys' Fees and Reimbursement of Expenses filed by Marina Trubitsky ("Trubitsky Fee Motion"); and (4) Application for Attorney Fees by Local Counsel David Hicks ("Hicks Fee Application").[1]  Also before the Court are various objections that the Court has received in response to Notice of the Settlement.

This matter came before the Court for a hearing on the above-mentioned matters on February 8, 2017.  The parties in this action and related action, <u>Fernando v. PayPal</u>, No. C 10-1668 SBA, appeared through their counsel of record.  Attorney Anthony Ferrigno appeared for Objectors Wally Collins and Lucinda Christian (collectively "Collins Objectors"), and Objector Sam Miorelli ("Miorelli"), an attorney, appeared pro se.  Having read and considered the papers filed in connection with these matters and upon consideration of the arguments presented at the hearing, the Court hereby GRANTS Plaintiffs' Motion for Final Approval, GRANTS IN PART the Class Counsel Fee Motion and the Hicks Fee Application, and DENIES the Trubitsky Fee Motion.  All objections to final settlement approval are OVERRULED.

# I.    **BACKGROUND**

## A.    OVERVIEW

PayPal operates an on-line payment processing service that functions as a third party intermediary to facilitate payments between buyers and sellers of goods and services sold on-line through commercial websites, such as eBay.  As a condition of using PayPal's service, subscribers must abide by the PayPal User Agreement ("User Agreement"), among other agreements.  Third Am. Compl ("TAC").  ¶ 35, Dkt. 291.  The User Agreement

---

[1] Marina Trubitsky ("Trubitsky") and David Hicks ("Hicks") are counsel of record in the related action, <u>Fernando v. PayPal</u>, No. C 10-1668 SBA, and are permitted under the terms of the Settlement to submit an application for attorneys' fees.

provides that upon a breach of its terms—such as by engaging in defined "Restricted Activities"—PayPal "may hold funds in a seller's account by placing reserves on accounts and/or limiting and/or suspending seller's accounts and holding the funds in the accounts for up to and in some cases exceeding 180 days."  Id. ¶ 38.  Among other things, Restricted Activities are defined to include a breach of the User Agreement or any other agreements with PayPal, selling counterfeit goods, and providing false or inaccurate information.  Id. ¶ 39.  Plaintiffs are PayPal users who allege that PayPal placed holds on their account funds TAC ¶¶ 10-17.  The foregoing policies and practices have given rise to several actions including the instant case, Zepeda v. PayPal, No. 10-2500 SBA, and Fernando v. PayPal, No. 10-1668 SBA.[2]  The procedural history of these actions is summarized below.

### 1.   Zepeda v. PayPal

On May 12, 2010, Ronya Osman and Brian Pattee filed a complaint in this Court against PayPal and eBay.  See Osman v. PayPal, Inc., No. C 10-2046 PVT.  A month later on June 7, 2010, Moises Zepeda ("Zepeda") filed the instant action against PayPal.  Two days thereafter, Michael Spear filed a third complaint against PayPal and eBay in the matter styled as Spear v. PayPal, Inc. and eBay, Inc., No. C 10-2555 PVT.  In July 2010, the plaintiffs in Osman and Spear voluntarily dismissed their respective actions under Federal Rule of Civil Procedure 41(a), without prejudice.  In their place, Zepeda filed a First Amended Class Action Complaint ("FAC") on August 13, 2010, which joined the plaintiffs from the Osman and Spear actions, among others.  Dkt. 22.

The FAC alleged causes of action against PayPal for:  (1) breach of contract; (2) breach of fiduciary duty; (3) accounting; (4) violation of California's Consumers Legal Remedies Act ("CLRA"); (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; and (6) unjust enrichment.  The FAC was filed on behalf of a nationwide class defined as "[a]ll PayPal, Inc. account holders whose funds have been

---

[2] The Court deemed Fernando to be a "related action" under Civil Local Rule 3-12, though the actions have not been consolidated under Federal Rule of Civil Procedure 42. Dkt. 61.

held by Pay[P]al or whose accounts were closed, suspended, or limited by PayPal," along with a natural person class defined as "[a]ll natural persons whose funds have been held by Pay[P]al or whose accounts were closed, suspended, or limited by PayPal."  FAC ¶ 57. Mark Todzo of Lexington Law Group LLC and Jeffrey Leon of Quantum Legal LLC (formerly Complex Litigation Group LLC) have served as the principal attorneys representing Plaintiffs and are now Class Counsel.

After Plaintiffs filed the FAC, the Honorable Lucy Koh, the judge originally assigned to the action, recused herself and the matter was reassigned to the Honorable Jeremy Fogel.  On September 30, 2010, PayPal filed a motion to dismiss the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 26.  Shortly thereafter, Plaintiffs filed a motion for the appointment of lead counsel.  Dkt. 28.  On February 15, 2011, Judge Fogel granted PayPal's motion and dismissed all claims with leave to file a Second Amended Complaint ("SAC") within thirty days.  See 2/15/11 Order Granting Motions to Dismiss and to Appoint Interim Lead, Liaison, and Class Counsel ("2/15/11 Order") (reported as Zepeda v. PayPal, Inc., 777 F. Supp. 2d 1215, 1220-21 (N.D. Cal. 2011)), Dkt. 49.  In the same order, Judge Fogel granted Plaintiffs' motion for the appointment of lead counsel. Zepeda, 777 F. Supp. 2d at 1223-24.

In rejecting Plaintiffs' tort and contract claims and demand for an accounting, Judge Fogel ruled that:  (1) the PayPal User Agreement affords PayPal "sole discretion" to place holds on its users' accounts, irrespective of whether the user has engaged in restricted activities; and (2) PayPal has no contractual obligation to provide users with an explanation as to why their accounts may have been frozen.  Id. at 1219-221.  Judge Fogel also rejected the CLRA claim on the ground that Plaintiffs are not "consumers" and therefore lack prudential standing.  Id. at 1222.  As to the UCL claim, Judge Fogel ruled that the pleadings failed to satisfy the heightened standard for pleading fraudulent conduct under Federal Rule of Civil Procedure 9(b).  Id. at 1222-23.  Finally, he dismissed the unjust enrichment claim on the ground that the parties' relationship was governed by an express contract.  Id. at 1223.

While Plaintiffs were given the opportunity to attempt to replead their claims, it became apparent to them that filing a SAC would trigger another motion to dismiss and engender further delay and cost.  Mot. for Prelim. Approval at 3, Dkt. 166.  In addition, Plaintiffs were concerned that, in light of Judge Fogel's interpretation of the User Agreement, it would be difficult to cure the deficiencies that resulted in the dismissal of the FAC.  Id.  For its part, PayPal was receptive to discussing settlement.  Id.  Thus, instead of amending the pleadings, Plaintiffs commenced settlement discussions with PayPal.  Id.

### 2. **Fernando v. PayPal and eBay**

On April 19, 2010, Devinda Fernando and Vadim Tsigel, represented by New York attorney Trubitsky and local counsel Hicks, filed the <u>Fernando</u> putative class action against PayPal and eBay.  On March 22, 2011, the plaintiffs filed a First Amended Class Action Complaint ("<u>Fernando</u> FAC"), which, inter alia, joined Michail Zinger, Amy Rickel, Fred Rickel, Ira Gilman, Lacy Reintsma and Shaul Behr as additional party-plaintiffs.  <u>Fernando</u> FAC, Dkt. 23.

The <u>Fernando</u> FAC alleges that PayPal improperly restricts, freezes or closes customer accounts because of "suspicious activity," without notice, explanation or responding to the inquiries of affected users.  <u>Id.</u> ¶¶ 23-24.  The pleadings also aver that PayPal freezes the accounts of affected users, thereby preventing them from cancelling their accounts and recovering their funds.  <u>Id.</u> ¶ 25.  Such conduct is alleged to violate the EFTA, as well as Section III of the Injunctive Relief portion of the settlement agreement reached in <u>In re PayPal Litigation (Comb v. PayPal, Inc.)</u>, Nos. C 02-1227 JF, C 02-2777

JF. Id. ¶¶ 25-26.[3]  The Fernando FAC alleges six claims for: (1) violation of the EFTA;

(2) violation of the Comb settlement agreement; (3) conversion; (4) money had and

received; (5) unjust enrichment; and (6) negligence.  Fernando, Dkt. 1.  Although PayPal

filed a motion to dismiss the FAC, the motion was taken off calendar to facilitate settlement

discussions.  Id., Dkt. 26, 52.

### B. SETTLEMENT NEGOTIATIONS

#### 1. The Original Settlement

##### a) *Zepeda*

Following the dismissal of the FAC by Judge Fogel in Zepeda, PayPal shared

detailed and confidential information concerning its hold and reserve practices with the

Plaintiffs' counsel.  Dkt. 166 at 9.  The parties thereafter engaged in settlement negotiations

over the course of several months regarding the underlying claims and facts.  Mot. for

Prelim. Approval at 5, Dkt. 112.  The parties then participated in a mediation which took

place on or about May 11, 2011, supervised by mediator Randall Wulff of Dispute

Resolution.  Id.  Those discussions and the ensuing mediation resulted in the first settlement

in this action.  Id.; 2/24/14 Order at 4, Dkt. 205.

According to the original Settlement Agreement, "the primary focus of the

settlement is the implementation (or maintenance) of business practices" with respect to

PayPal's policies and practices regarding "holds," "reserves" and "limitations," as those

terms are used by PayPal.  Settlement Agt. § 3.3, Dkt. 166-1.  To that end, PayPal agreed to

provide prospective injunctive relief to a Settlement Class defined as "all current and

---

[3] Comb was a class action brought on behalf of a class defined as "[a]ll Persons who opened a PayPal account during the period from October 1, 1999 through January 31, 2004," which alleged that PayPal routinely "froze" customer accounts flagged as "suspicious," without justification or explanation.  Comb, Dkt. 234 at 6-7.  The parties eventually entered into a settlement agreement that provided both injunctive relief and a settlement fund in the amount of $9.25 million.  Id., Dkt. 249. The injunctive relief portion of the settlement was intended "to implement the requirements of the [EFTA] . . . and to address the operating practices which led to widespread complaints by users of the PayPal system."  Id., Dkt. 247 at 7.  On November 2, 2004, Judge Fogel finally approved the class settlement in Comb and entered a Final Judgment and Order of Dismissal with Prejudice. Id.

former users of PayPal who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order." Id. § 1.26.  Defendants agreed to pay $1,425,000 into a Settlement Fund, from which $712,500 in attorneys' fees, and $5,000 in incentive awards for each of the eight class representatives were to be deducted.  Id. § 1.24. The remainder of the Settlement Fund was to be contributed as a cy pres award to the Electronic Frontier Foundation ("EFF"). Id. § 3.7.  No part of the Settlement Fund was designated for a monetary distribution to the Class.

b)   ***Fernando***

On December 20, 2011, the parties in the Fernando action participated in a separate mediation before the Honorable Ellen James (Ret.), which resulted in a global settlement of both actions.  Given the overlapping claims of both lawsuits, the parties decided to merge the settlements in Zepeda and Fernando in order to avoid confusing serial notices to the Class.  Mot. for Prelim. Approval at 5-6.  The Settlement Term Sheet[4] indicated that Plaintiffs in Zepeda were to file a Second Amended Complaint that joined eBay as a party-defendant, and joined the named plaintiffs from Fernando and incorporated their claims. Hicks Decl. Ex. E, Dkt. 295-2 at 1.  In addition, Defendants agreed to contribute an additional $425,000 to the global settlement fund in order to settle the Fernando action, and that Trubitsky and Hicks (collectively "Fernando counsel") could submit a fee application seeking up to 50% of the additional settlement funds (i.e., $212,500).  Id.

2.   **Trubitsky's Disruptive Conduct**

In January 2012, Trubitsky informed the other parties that certain of the Fernando plaintiffs no longer desired to participate in the global settlement, and demanded the opportunity to negotiate individual settlements with PayPal and eBay. 3/29/12 Case Mgt. Conf. Stmt. ("3/29/12 CMC Stmt.") at 6-7, Dkt. 80; Moon Decl. in Supp. of Def.'s Opp'n to Intervenors' Mot to Intervene and for a Stay of Proceedings ¶¶ 2-5 ("Moon Decl."), Dkt. 99-1.  Trubitsky reiterated these demands at the Case Management

---

[4] The Settlement Term Sheet was signed by Trubitsky and Hicks on behalf of the Fernando plaintiffs and counsel for PayPal and eBay.  Id.

Conference held on April 19, 2012, and insisted that the global settlement could not move forward.  4/19/12 Minute Order, Dkt. 84.  The Court indicated that any party who did not desire to be bound by the settlement was free to opt out and file a separate action.  Id. Counsel representing Plaintiffs in Zepeda, in turn, indicated their intention to proceed with the settlement and file a motion for preliminary approval.  Stipulation, Dkt. 89.

Consistent with the terms of their original settlement, Plaintiffs filed a SAC in Zepeda on October 9, 2012, which joined eBay, and added claims for violations of the EFTA and the Comb settlement, which had been alleged in the Fernando pleadings. However, the SAC did not join any of the Fernando plaintiffs as party-plaintiffs.  On October 18, 2012, Plaintiffs in this action filed their initial motion for preliminary approval. Dkt. 112.

Apparently as a result of the Zepeda plaintiffs' decision to move forward with the settlement without including the Fernando plaintiffs, Trubitsky began a series of actions ostensibly intended to derail the Zepeda settlement.  Pls.' Opp'n to Mot. to Extend Deadline to File Mot. for Prelim. Approval at 2-3, Dkt. 88 at 2-3; 11/27/12 Order at 2, Dkt. 122; 2/24/14 Order at 5.  Among other things, Trubitsky commenced a new lawsuit against eBay, styled as Dunkel, et al. v. eBay, Inc., No. C 12-1452 EJD, and moved for an order permitting the Dunkel plaintiffs to intervene in the Zepeda action.  Id.  In addition, Trubitsky separately sought to take control of the Zepeda action by resurrecting her dormant motions to consolidate Zepeda and Fernando, to be appointed lead counsel, and have those motions heard prior to Plaintiffs' motion for preliminary approval.  See Fernando, Dkt. 79, 51.[5]  The Court denied all motions without prejudice.  11/27/12 Order, Dkt. 122.  Finding that it was in the best interest of all parties to resolve their differences and reach a global settlement, the Court instead referred the parties to Magistrate Judge Nathanael Cousins for a joint, mandatory settlement conference relating to Zepeda,

---

[5] The Fernando plaintiffs originally filed their Motion to Consolidate Case and Appoint Lead Counsel on October 3, 2011.  Fernando, Dkt. 40.  However, in light of their pending settlement, the parties in Fernando stipulated to vacate the hearing on that motion, as well as Defendants' pending motion to dismiss the Fernando FAC.  Fernando, Dkt. 51.

Fernando and Dunkel.  Id. at 4.  Judge Edward Davila, who was presiding over the Dunkel action, also referred his case to Judge Cousins for the settlement conference.

The global settlement conference was originally scheduled for January 17, 2013, but was reset to February 7, 2013.  Fernando, Dkt. 84, 88.  On February 7, 2013, counsel in Zepeda, Fernando and Dunkel appeared, though none of the Fernando plaintiffs attended the settlement conference, as required.  Id., Dkt. 95.  Judge Cousins continued the matter to the next day for further settlement discussions.  Id.  Trubitsky and her clients, however, failed to appear for the second day of the settlement conference and no settlement was reached in Fernando.  2/8/13 Minute Order, Dkt. 133.  Accordingly, Judge Cousins issued an order to show cause ("OSC") directing Trubitsky and the Fernando plaintiffs to show cause why that action should not be dismissed, civil sanctions should not be imposed, a payment of expenses to the other participants in the settlement conference should not be awarded, and/or the pro hac vice admission of Trubitsky should not be revoked.  Order to Show Cause, Dkt. 135; Fernando, Dkt. 100.[6]  The Fernando action was stayed until Judge Cousins later vacated the OSC.  Fernando, Dkt. 158 at 9, 169.[7]

### C.   MOTIONS FOR PRELIMINARY APPROVAL

#### 1.   Original Settlement

Following the unsuccessful global settlement conference before Judge Cousins, the Zepeda plaintiffs filed a renewed motion for preliminary approval, based principally on the settlement they had previously reached with PayPal and eBay in May and December 2011.  Dkt. 166.  On February 24, 2014, the Court denied Plaintiffs' motion on the grounds that

---

[6] Around this time period, the Court was inundated with numerous, albeit unsuccessful, attempts by attorney Garrett Skelly to intervene and assume control over the Zepeda and Fernando actions.  Skelly claimed to represent three Fernando plaintiffs—Amy and Fred Rickel, and Lacy Reintsma—as well as two non-party putative class members, Burgess and Caleb Reintsma.  The incessant, frivolous motion practice and interference by Skelly led to further delays in resolving this action.  Dkt. 122, 125, 129, 147, 151, 157, 163, 165, 196, 197, 202.

[7] In a brief order, Judge Cousins found that Trubitsky's absence was not willful, and that in light of Judge Davila's dismissal of the Dunkel action and the Court's preliminary approval of the Zepeda settlement, no further action on the OSC was necessary.  Fernando, Dkt. 169.

the settlement release was overbroad and the Settlement did not provide monetary relief for the class. 2/24/14 Order at 11-12. The Court granted the parties leave to resubmit a renewed motion for preliminary approval within thirty days. Id. at 12. The parties subsequently requested, and the Court granted, several continuances of that deadline in order to facilitate additional settlement discussions. 7/2/14 Order, Dkt. 234.

### 2.    Revised Settlement

#### a)    *Terms*

The parties participated in two full-day mediations on March 24, 2014, and June 9, 2014, before Magistrate Judge Edward Infante (ret.) of JAMS, which eventually led to an Amendment to Settlement Agreement, which revised certain of the terms of the original Settlement. Todzo Decl. in Supp. of Mot. for Prelim. Approval ¶ 3, Dkt. 275-1. PayPal again agreed to provide the injunctive relief from the original settlement. But unlike its prior version, the revised Settlement created a $3,200,000 settlement fund to provide two forms of monetary relief to the class members who had a hold placed on their account: (1) a Basic Claim, which is a guaranteed payment based on the amount and length of a hold or reserve; and (2) an Alternate Claim, which compensates for business damages, subject to proof of such damages by Claims Class members. Am. Settlement Agt. §§ 1.2, 1.3, Dkt. 235-1. The payments for Basic Claims are equal to two-thirds of the average amount of interest at market rates[8] that would have accrued on the funds subject to a hold or reserve, subject to a $3 floor and rounded to the nearest $1 or $10, as follows:

---

[8] In July 2014, Plaintiffs retained Cornerstone Research, a consulting firm, to evaluate the amount of interest that would have accrued on accounts subject to a hold or reserve. McCabe Decl. ¶ 2, Dkt. 340-3. Cornerstone evaluated over 180 transactions involving over 10 million unique accounts during the time period from July 27, 2006, and March 20, 2014. Id. Based on an annualized money market interest rate of 3.65% in 2007, Cornerstone concluded that $100 held for 50 days would have yielded $0.50 interest. Id. ¶ 5. Applying that formula across the board, Cornerstone estimated the aggregate amount of interest across all accounts during the aforementioned time period to be $3,009,839.84. Id. ¶ 6.

| LENGTH OF HOLD/RESERVE | HOLD/RESERVE UNDER $1,000 | HOLD/RESERVE UP TO $1,000 | HOLD/RESERVE OVER $10,000 |
|---|---|---|---|
| 1-30 days | $3.00 | $3.00 | $3.00 |
| 31-90 days | $3.00 | $5.00 | $150.00 |
| 91-150 days | $3.00 | $10.00 | $100.00 |
| Over 150 days | $14.00 | $25.00 | $440.00 |

Alternate Claims will be paid in full, subject to proof, up to an individual cap of $2,000 per claim.  Id. § 5.1.  If the total of Alternate Claims (including administration expenses associated with those claims) exceeds $800,000, the Alternate Claims payments will be reduced on a pro-rata basis.  Id. § 5.5.

Of the $3,200,000 Settlement Fund, at least $1,840,000 will be available to pay Basic Claims.  Id. § 4.4.   If the Settlement Fund is not exhausted by the payment of Basic Claims, attorneys' fees and administrative costs, then up to an additional $200,000 from the Settlement Fund may be used to pay Alternate Claims.  Id. §§ 4.5, 5.4.  If the additional $200,000 is insufficient to cover all Alternate Claims, Defendants will pay an additional $800,000 to accommodate those claims.  Id. § 5.5.  Any leftover funds from uncashed settlement checks will be distributed on a cy pres basis to the EFF, a non-profit organization that works to defend civil liberties in the digital world, including the rights of users of commercial websites, such as PayPal.  Id. § 4.7.  Notably, the Settlement provides for the upward proration of payments to Claims Class members to ensure that the maximum possible relief goes to Settlement Class Members rather than a cy pres recipient, and that the only funds that need to be distributed on a cy pres basis are funds from uncashed settlement checks.  Id. § 5.4.

Consistent with the above, the Settlement creates two Settlement Classes:  A Claims Class and an Injunctive Relief Class. The Claims Class is comprised of "all current and former users of PayPal in the United States who:  (1) had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order; and (2) had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal." Id. § 1.6.  The Claims Class is intended to address claims for damages allegedly resulting

1   from either a hold or a reserve on funds held in a PayPal account, or due to the suspension

2   or closure of a PayPal account.  Id. §§ 1.6, 1.7.

3         The Injunctive Relief Class is defined as "all current and former users of PayPal in

4   the United States who had an active PayPal account between April 19, 2006 and the date of

5   entry of the Preliminary Approval Order." Id. § 1.19.  The Injunctive Relief Class is

6   intended primarily to address claims that are *not* based on damages that arise from a

7   violation of the settlement in Comb and related violations of the EFTA, including PayPal's

8   alleged failure to provide annual error-resolution notices and monthly account statements.

9   Id. §§ 1.19, 1.20.

10                        b)      ***Second Motion for Preliminary Approval***

11        Plaintiffs filed a second motion for preliminary approval based on the revised

12   settlement, which the Court denied on March 25, 2015.  Dkt. 264.  The Court found that

13   while the revised settlement agreement resolved many of the concerns that resulted in the

14   rejection of the prior agreement, two obvious deficiencies remained.  First, the Court

15   questioned whether it was appropriate to allege, much less settle, claims based on alleged

16   violations of the Comb settlement.  Since the judgment in that action specified that any

17   disputes concerning the agreement must be litigated in that case, the Court found that this

18   action was not the proper forum to address or release any claims arising from that

19   settlement.   Id. at 11.  Second, the Court noted that, although the issue was raised in the

20   order denying the first motion for preliminary approval, the parties still had not explained

21   why both settlement classes include persons who have been PayPal accountholders since

22   2006, even though the practices at issue allegedly began in 2008.  Id. at 12.

23                  **3.     Amendment to the Revised Settlement**

24                        a)     ***Terms***

25        Following the denial of Plaintiffs' second motion for preliminary approval, the

26   parties agreed upon amendments to the settlement agreement.  Todzo Decl. ¶ 6 & Ex. 1

27   (Amendment to Settlement Agreement), Dkt. 275-1, 275-2.  To address the Court's

28   concerns, the parties agreed that Plaintiffs would file a TAC that omits any claims based on

the alleged breach of the <u>Comb</u> Settlement.  Todzo Decl. Ex. 1 ¶ 5, Dkt. 275-2.  The settlement release has correspondingly been modified to eliminate any reference to the <u>Comb</u> Settlement.  <u>Id.</u> ¶¶ 1, 2.  With regard to the issue pertaining to the Class Period, the parties continued to propose that the Class Period for both of the proposed settlement classes should run from April 19, 2006, which is four years prior to the filing of the Complaint in the <u>Fernando</u> Action on April 19, 2010.  TAC ¶ 59.  Importantly, they explained that this Class Period is appropriate because Plaintiffs claims include allegations based on the closing or suspending of accounts and claims arising from PayPal's handling of buyers' accounts, and these activities occurred both before and after 2008.  To that end, the proposed TAC adds allegations that PayPal began engaging in the disputed practices prior to 2006.  <u>Id.</u> ¶ 39.

b) ***Third Motion for Preliminary Approval***

Based on the above amendments, Plaintiffs filed a third motion for preliminary approval on September 9, 2015.  Dkt. 275.  In connection with said request, Plaintiffs sought: (1) provisional certification of the two proposed Settlement Classes (i.e., the Claims Class and the Injunctive Relief Class); (2) the appointment of (a) the Complex Litigation Group, (b) Lexington Law Group, (c) Farmer, Jaffe, Weissing, Edwards, Fistos & Leherman, P.L., and (d) Seeger Weiss LLP, as Class Counsel; (3) approval of the proposed Class Notice; and (4) and the scheduling of a final approval hearing.  Proposed Order, Dkt. 275-8.  Non-party Reginald Burgess ("Burgess"), acting pro se, filed an Objection to Preliminary Approval of Settlement Motion and Demand Opt-Out if Proposed Settlement in Approved.  Dkt. 277.

On November 5, 2015, the Court granted Plaintiffs' motion for preliminary approval.  Dkt. 281.  In its Order, the Court conditionally certified a proposed Settlement Class comprised of a Claims Class and an Injunctive Relief Class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) & (3).  The Injunctive Relief Class is defined as: "All current and former users of PayPal in the United States who had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order."  The

Claims Class is defined as: "All current and former users of PayPal in the United States who: (1) had an active PayPal account between April 19, 2006 and the date of entry of the Preliminary Approval Order; and (2) had a hold or reserve placed on the account and/or the account was closed or suspended by PayPal.  Excluded from the Claims Class are judicial officers presiding over this action and the members of their immediate families and judicial staff."

The Court appointed Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller as class representatives pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Only Jeffrey A. Leon of Quantum Legal LLC and Mark N. Todzo and Howard Hirsch of Lexington Law Group were appointed as counsel for the Settlement Class.  Epiq Systems ("Epiq") was appointed as claims administrator, and deemed responsible for performing the duties described in the Amended Settlement Agreement.  The preliminary approval order approved, as to form and content, the proposed form of notice to the class via email notice, postcard notice, an Internet notice program and a settlement website including a long-form notice.  10/5/15 Order Granting Pls.' Motion for Prelim. Approval of Am. Class Action Settlement Agt. at 14-15, Dkt. 281.  Following preliminary approval, notice of the Settlement was served on the Class Members.  Marr Decl. ¶¶ 4-14, Dkt. 340-2; Leon Decl. ¶ 4, Dkt. 340-1.  Per the terms of the Settlement, PayPal provided email notice to approximately 100 million PayPal customers, including approximately 10.5 million Claims Class members.  Mot. for Final Approval at 10, Dkt. 340.

**D.   FINAL APPROVAL SCHEDULE AND PROCESS**

On January 29, 2016, the Court approved the final approval schedule proposed by the parties.  Dkt. 285, 290.  On the same day, Plaintiffs filed their TAC, as contemplated by the Settlement.  Dkt. 291.  In March 2016, Class Counsel and Fernando counsel filed their respective motions for attorneys' fees in anticipation of the fairness hearing then scheduled for July 13, 2016.  Dkt. 295, 296, 297.  Shortly before the date set for the fairness hearing, however, the parties notified the Court that some members of the Settlement Class may not

have received notice in accordance with the Court's scheduling Order.  Stipulation, Dkt. 325.  Thus, at the parties' request, the Court vacated and reset the fairness hearing and extended the deadlines governing notice and for the submission of claim forms, opt-out requests and objections to the Settlement.  7/6/16 Order, Dkt. 329; see also Wilson Decl. ¶ 2-4 & Exs. A & B, Dkt. 350.[9]

As of November 4, 2016, the claims administrator has received 392,191 claims, comprised of 379,720 Basic Claims and 12,448 Alternate Claims submitted electronically, and 23 paper claims by mail.  Marr Decl. ¶ 8.  Epiq has received a total of 75 opt-outs.  Id. ¶ 7.  In response to Notice of the proposed Settlement, the Court has received a total of 10 objections from:  (1) Miorelli; (2) Collins Objectors; (3) Tammy Perkins ("Perkins"); (4) Larry A. Guess ("Guess"); (5) Glenn Greene ("Greene"); (6) Paul Leach ("Leach"); (7) Frank Phillips ("Phillips"); (8) Steve Schroeder ("Schroeder"); and (9) Carmen DeBellis ("DeBellis").   Dkt. 292, 293, 294, 303, 315, 317, 333, 337, 338, 339.

Miorelli is an out of state attorney and a professional objector.  See In re: Target Corp. Customer Data Sec. Breach Litig., No. MDL142522PAMJJK, 2016 WL 4942081, at *1 (D. Minn. Jan. 29, 2016). Collins Objectors are represented by the attorneys who are suing PayPal and eBay in a competing state court class action styled as, Chen v. eBay, Inc., Alameda Cty. Super. Ct., No RG 15780778.  Perkins is represented by attorney Matthew Kurilich, a professional objector.  The remaining Objectors submitted pro se objections.[10]

---

[9] Notice to the Settlement Class was effectuated in accordance with the Court's preliminary approval order.  See Wilson Decl. ¶¶ 2-4, and Exs. A & B.  Distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

[10] Burgess previously filed a pro se objection to Plaintiffs' motion for preliminary approval.  The Court found that certain of his objections had already been addressed, while the remaining objections were more appropriately raised in connection with the motion for final approval.  11/5/15 Order at 9, Dkt. 281.  Since he did not renew his objections, the Court finds Burgess has waived his right to assert any.  On October 16, 2016, Melanie Catanese ("Catanese") filed an objection, claiming that she did not receive Notice of the Settlement until after the October 14, 2016 deadline had passed. Dkt. 339.  However, Catanese's objection is, in fact, not an objection.  Rather, she requests leave to file a late claim.  Plaintiffs do not address her request.  Finding no opposition, the Court grants Catanese additional time to file her claim.

- 15 -

**E.     MOTION FOR FINAL APPROVAL AND FEE MOTIONS**

On November 14, 2016, Plaintiffs filed a Motion for Final Approval of Amended Class Action Settlement.  In their motion, Plaintiffs seek an order (1) conferring final approval of the Settlement Agreement and Amendment to Settlement Agreement, see Dkt. No. 275-2; and (2) confirming certification of the Settlement Class as defined therein.  In addition, Plaintiffs' motion responds to each of the objections to the Settlement. Separately, in their companion Motion for Award of Attorneys' Fees, and Reimbursement for Costs and Service Awards, Plaintiffs seek payment of:  (1) $902,000 in attorneys' fees; (2) $38,000 in costs; and (3) incentive (service) awards in the amount of $20,000 ($2,500 for each of the named plaintiffs in Zepeda).  Fernando counsel filed separate fee motions requesting payment of $212,500.

The hearing on the aforementioned motions took place on February 7, 2017.  Mark Todzo and Jeffrey Leon appeared on behalf of the Zepeda Plaintiffs; David Hicks and Christine Tour-Sarkissian ("Tour-Sarkissian")—specially appearing for Trubitsky— appeared on behalf of the Fernando Plaintiffs; Julia Strickland and David Moon appeared by telephone for Defendants eBay and Paypal; Anthony Ferrigno appeared for Collins Objectors; and Objector Miorelli appeared pro se.  At the conclusion of the hearing, the Court took all matters under advisement.[11]

## II.     **FINAL APPROVAL**

### A.     **LEGAL STANDARD**

The Ninth Circuit maintains "a strong judicial policy" that favors class action settlements.  Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015).  Nonetheless, the Court may finally approve of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To assess the fairness of a settlement, courts are to consider the eight "Churchill factors," including:

---

[11] At the hearing, the parties confirmed that in the event the Court finally approves the Settlement, both the instant action and Fernando should be dismissed.

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).  "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'"  Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).  The rationale for the heightened standard is to ensure that "class representatives and their counsel have [not] sacrificed the interests of absent class members for their own benefit."  Id.

Courts must examine "the settlement taken as a whole, rather than the individual component parts" for fairness.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  The Court may approve or reject the settlement and cannot "delete, modify or substitute certain provisions" of the settlement.  Id.  "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982).  Rather, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  Id.  To that end, the Court should consider whether there are any objections to the proposed settlement and, if so, the nature of those objections.  Ko v. Natura Pet Prod., Inc., No. C 09-02619 SBA, 2012 WL 3945541, at *6 (N.D. Cal. Sept. 10, 2012).  If objections are filed, the district court is to evaluate whether they suggest serious reasons why the settlement proposal might be unfair.  Id.

**B.   ANALYSIS OF FACTORS**

**1.   Strength of Plaintiffs' Case**

The first factor to consider is the strength of Plaintiffs' case.  Such an evaluation entails "objectively" considering "the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012).  In situations where a case is not particularly strong, a settlement is preferable.  See In re M.L. Stern Overtime Litig., No. 07CV118 BTM (JMA), 2009 WL 3272872, at *2 (S.D. Cal. Oct. 9, 2009) ("the diminished strength of Plaintiff's case favors settlement approval.").  In assessing the strength of a case, a court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  Officers for Justice, 688 F.2d at 625.

Here, the substantive merits of Plaintiffs' claims appear to be weak.  As discussed, the Court previously granted Defendants' motion to dismiss and dismissed *all claims* alleged in the FAC.  Dkt. 49.  Similarly, the claims later asserted by Plaintiffs that have not yet been subject to motion practice, i.e., violation of the Comb settlement and the EFTA, are not likely to fare any better.[12]  With regard to the Comb settlement, the Court, in its March 25, 2015 Order, pointed out that the Judgment entered in that action specifically retained jurisdiction over any dispute over the enforcement of that settlement, including any claim that PayPal has not fulfilled its obligations under that agreement.  Dkt. 264 at 11 (citing Comb, Dkt. 309 ¶ 14).  As such, the instant action is not the proper vehicle to assert violations of the Comb settlement.  Id.

The Court also questions the likelihood of success on Plaintiffs' claim that PayPal violated EFTA's disclosure and error correction requirements (which is alleged as the Ninth

---

[12] As noted, in connection with the original version of the settlement reached in December 2011, Plaintiffs incorporated the claims from the Fernando action that PayPal's practices violate the Comb settlement and the EFTA.

- 18 -

claim for relief in the TAC).  The EFTA was enacted "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b).  But those obligations only apply to a "financial institution", which PayPal arguably is not.[13]  C.f., Friedman v. 24 Hour Fitness USA, Inc., 580 F. Supp. 2d 985, 996 (C.D. Cal. 2008) (ruling that an operator of fitness centers that receives credit card payments is not a financial institution and characterizing plaintiffs' claim as "frivolous").  Moreover, Plaintiffs' claims appear to be largely predicated upon commercial transactions, which are outside the ambit of the EFTA.  See Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) ("Accordingly, the EFTA does not apply to accounts that are used primarily or solely for commercial purposes.") (internal quotations and citation omitted); see also 15 U.S.C. § 1693a(2) (specifying that accounts subject to the EFTA must be "established primarily for personal, family, or household purposes.").  Although the Court need not definitively conclude whether or not Plaintiffs would ultimately prevail on their EFTA claim, it suffices to say that the merits of such claim are, at best, uncertain.  See Officers for Justice, 688 F.2d at 625.

In sum, the Court finds that the facial weakness of Plaintiffs' claims militates in favor of settlement.

### 2.  Risk, Expense, Complexity and Likely Duration of Further Litigation

The strength of the claims alleged (or lack thereof) should be balanced against the risk, expense, and complexity of their case, as well as the likely duration of further litigation.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000), as amended (June 19, 2000).  Here, Plaintiffs admittedly face substantial risks and are likely to incur significant expense in the event they choose to proceed further with the litigation.

---

[13] The EFTA defines a financial institution as a "State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).

1   Absent a settlement, Plaintiffs would be required to seek and obtain an order certifying the

2   class, which may prove difficult in light of the complexity of the claims presented and the

3   number of class members.  In addition, the parties would likely be required to engage in

4   significant fact and expert discovery germane to the merits of the claims and damages.

5   Given the tenuousness of Plaintiffs' claims, coupled with the risk, expense, complexity and

6   the likely extended duration of further litigation, the Court finds that this factor weigh in

7   favor of approving the settlement.  <u>See</u> <u>Rodriguez v. W. Publ'g Co.</u>, 563 F.3d 948, 966 (9th

8   Cir. 2009) (recognizing that difficulties and risks in litigating weigh in favor of approving a

9   class settlement).

10              **3.      The Risk of Maintaining Class Action Status Throughout the Trial**

11              The third factor for the Court's consideration involves evaluating the risk of

12  maintaining class certification if the litigation were to proceed.  Plaintiffs have not

13  previously sought to certify the class in this matter – and it is an open question as to

14  whether, absent a settlement, any class would, in fact, be certified in this action.

15  Defendants' position is that PayPal's imposition of account holds and reserves results from

16  the operation of its proprietary fraud monitoring program.  As a result, each Plaintiff

17  arguably would be required to individually prove that the hold or reserve which PayPal

18  placed on his or her account was not justified based on activities which were in

19  contravention of the terms of service.  <u>Comcast Corp. v. Behrend</u>, – U.S. –, –, 133 S.Ct.

20  1426, 1433 (2013); <u>see also</u> <u>Sweet v. Pfizer</u>, 232 F.R.D. 360, 365 (C.D. Cal. 2005)

21  (denying class certification based on allegations that the drug manufacturer inadequately

22  warned consumers about the side-effects based on lack of typicality and the presence of too

23  many individualized issues).  Individualized proof would also be necessitated by the fact

24  that different Plaintiffs may be affected differently, depending on the Terms of Service then

25  in effect.  While Plaintiffs claim they have responses to these arguments, there is no

26  question that maintaining this case as a class action through trial would be highly uncertain.

27  The grant or denial of class certification would result in interlocutory appeals, and involve

28  the expenditure of significant time and expense.  In contrast, a settlement delivers certain

and concrete benefits now – on a classwide basis – without the necessity of proving and maintaining a certified class.  See, e.g., Noll v. eBay, 309 F.R.D. 593, 606-607 (N.D. Cal. 2015).

### 4.      The Amount Offered in Settlement

#### a)      *Sufficiency of Monetary Relief*

The Settlement provides for injunctive relief to address the PayPal practices underlying this action along with a $3,200,000 settlement fund, of which at least $1,840,000 will be available to pay the Basic Claims of Claims Class members whose accounts were subject to holds or reserves and lost interest income.  The Settlement, as amended, also creates a separate fund of $800,000 for Alternate Claims from which class members can pursue specific, individual claims for damages to their businesses upon presentation of proper documentation.

Miorelli and Collins Objectors argue that the Settlement provides insufficient monetary relief.  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  Officers for Justice, 688 F.2d at 628.  Rather, courts evaluating the amount offered in settlement for fairness must consider the settlement as a "complete package taken as a whole, rather than the individual component parts[.]"  Id. at 628.  In the instant case, the parties' matrix for claims payments is based on a reasonable assessment of the time value of funds temporarily placed on hold—as it takes into account the *amount* involved as well as the *duration* of the hold.  See McCabe Decl. ¶¶ 2-6.  The Court finds that the approach undertaken by the parties in negotiating the monetary component of the Settlement, coupled with the injunctive relief provided, is fair, reasonable and adequate.

Separately, Miorelli faults Plaintiffs for not calculating the maximum potential recovery on their claims or taking into account Defendants' exposure to punitive damages. Setting aside Miorelli's failure to cite any relevant decisional authority to support his position, he ignores that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  Officers for Justice, 688 F.2d 625

1   (citations omitted).  It is for that very reason that the Ninth Circuit has rejected Miorelli's

2   argument.  Rodriguez, 563 F.3d at 965 ("We are not persuaded otherwise by Objectors'

3   further submission that the court should have specifically weighed the merits of the class's

4   case against the settlement amount and quantified the expected value of fully litigating the

5   matter."); accord Koumoulis v. LPL Fin. Corp., No. 09CV1973-DMS BLM, 2010 WL

6   4868044, at *2 (S.D. Cal. Nov. 19, 2010) ("Although Class Counsel did not indicate what

7   the maximum potentially recoverable amount would be if the instant case was to proceed to

8   trial, the Court is able to assess the reasonableness of the amount offered in settlement

9   without such a comparison point.").  Miorelli's ancillary contention that Plaintiffs should

10  have taken into account Defendants' potential exposure to punitive damages has likewise

11  been rejected by this Circuit.  See Rodriguez, 563 F.3d at 965.

12          Miorelli next complains that the Basic Claims payment matrix "only looks at the

13  longest hold, not the cumulative sum of moneys held and days held."  Dkt. 333 at 8.  The

14  parties structured the payouts on a per hold basis based on the core allegation by Plaintiffs

15  that PayPal does not disclose its hold policy.  Dkt. 340 at 23.  In other words, after

16  experiencing a first hold, the user would be aware of PayPal's policy.  As such, the parties

17  concluded that a user should not be able to recover for more than one hold.  Id.  In any

18  event, the mere possibility that the claims matrix could have been structured differently or

19  better does not demonstrate that the Settlement is not fair, reasonable or adequate.  See

20  Linney, 151 F.3d at 1242 (noting that fairness of a proposed settlement "is not to be judged

21  against a hypothetical or speculative measure of what might have been achieved by the

22  negotiators."); In re TD Ameritrade Account Holder Litig., No. C 07-2852 SBA, 2011 WL

23  4079226, at *9 (N.D. Cal. Sept. 13, 2011) ("The fundamental flaw in Mr. Elvey's argument

24  is that it ignores that the Settlement is a *compromise*, which balances the possible recovery

25  against the risks inherent in litigating further. The possibility that the Settlement does not

26  provide for a payout to every conceivable accountholder who in some way may have been

27  affected by the data breach does not establish that the Settlement is unfair or

28  unreasonable.").  In any event, even if Miorelli's criticisms of the Settlement had merit—

1 | which they clearly do not—they fail to account for the weakness of Plaintiffs' claims and

2 | the risk of maintaining this litigation going forward.  See Officers for Justice, 688 F.2d at

3 | 628.

4 |    Finally, Collins Objectors assert that the monetary component of the Settlement is

5 | insufficient to cover all potential class claims.  In particular, they posit that a settlement

6 | fund of $243 million would be necessary to pay each of the 81 million class members'

7 | claim of $3.  The flaw in this argument is that it ignores that approximately 90 percent of

8 | the Settlement Class members are *not* Claims Class members and therefore are not entitled

9 | to submit a claim for damages (and are thus subject to a substantially narrower release of

10 | claims).  Moreover, the parties calculated the amount necessary for the Settlement Fund by

11 | taking into account the universe of accounts that were subject to a reserve or hold during

12 | the relevant time period.  Plaintiffs' retained expert analyzed those accounts and

13 | determined that the aggregate amount of interest on all holds was approximately $3

14 | million—not $243 million as speculated by Collins Objectors.  See McCabe Decl. ¶ 6.

15 |    As an ancillary matter, Collins Objectors argue that the Class Counsel intentionally

16 | set the claim value at $3 in the hopes that such an ostensibly small amount would

17 | discourage class members from submitting claims.  No evidence has been presented to

18 | support this assertion.  In addition, Class Counsel explained at oral argument that the base

19 | figure was intended to *increase* the number of claims.  Based on Plaintiffs' expert's

20 | calculations, the actual "loss" of interest for each hold is around $0.03.  Since it was

21 | unlikely that any class member would file a claim for such a negligible amount, they

22 | decided to increase the minimum payout to $3.00, with the goal of encouraging more

23 | claims.  Indeed, Collins Objectors' speculation regarding Class Counsel's intent to dissuade

24 | the filing of claims is belied by the fact that close to 400,000 claims have been filed by

25 | Claims Class members.  Marr Decl. ¶ 8.

26 |     b)  ***Sufficiency of Injunctive Relief***

27 |    With regard to the injunctive relief afforded under the Settlement, Miorelli asserts

28 | that it is "illusory" because PayPal implemented the changes to its business practices before

it was legally required to do so.  Dkt. 333 at 10-11.  However, PayPal implemented those changes as a direct result of the tentative settlement reached with Plaintiffs.  That PayPal implemented those changes prior to final approval of the Settlement is, in fact, an additional benefit to the Settlement Class members, and does not suggest any deficiency in the relief afforded under the Settlement.  Moreover, the Settlement will make the injunctive relief both binding and enforceable, ensuring that Defendants maintain such practices until two years following the date of the Preliminary Approval Order.  Dkt. 275-2, p. 59, § 4.2; 281.  In the absence of the Settlement, Defendants would be free to cease providing such relief to its users.

During oral argument, Miorelli cited the Ninth Circuit's recent decision in Koby v. ARS National Services, Inc., No. 13-56964, 2017 WL 359670 (9th Cir. Jan. 25, 2017) for the proposition that injunctive relief voluntarily provided to the class by a defendant is not considered of "value" to the Class.  Koby is distinguishable.  In that case, the defendant voluntarily changed its voicemail message over a year before the parties settled their dispute.  On appeal, the Ninth Circuit held that because such a change was not made "because of any court- or settlement-imposed obligation," noting that "[t]he injunction does not obligate [defendant] to do anything it was not already doing."  Id. at *6.  In contrast, the injunctive relief afforded in this action was formulated "because of" the settlement agreement reached by the parties.  The fact that Defendants opted to implement the changes prior to the Court's preliminary or final approval of the Settlement does not alter the fact that the Settlement itself was the catalyst for the change.

Collins Objectors claim that the Settlement is meaningless because it does not prohibit PayPal from imposing holds or reserves or require PayPal to disclose the reason that a hold has been imposed.  Dkt. 316 at 18-19.  The stated purpose of PayPal's hold/reserve policy is to protect buyers and sellers in instances where there may be fraudulent practices or other improprieties involved in the transaction.  Aside from their opinion that such a practice should be prohibited, Collins Objectors provide no legal analysis or authority to support their assertion.  But even if they had done so, the mere fact

that the Settlement does not eliminate PayPal's hold/reserve practice or compel PayPal to explain the reason for a hold does not ipso facto demonstrate that the Settlement, particularly the provisions for injunctive relief, are not fair, reasonable or adequate.

### 5.    Stage of the Proceedings

The stage of the proceedings, including the amount of discovery completed, is germane to the fairness, reasonableness, and adequacy of a settlement.  See In re Mego, 213 F.3d at 459.  Although this case has been pending for an extended period of time, no formal discovery has been conducted due to the parties' protracted efforts to reach a settlement. Nonetheless, the parties informally exchanged information and documents in connection with the three prior mediations conducted in this action.

Collins Objectors contend that the lack of discovery weighs against approving the Settlement.  The Court disagrees.  "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted).  As discussed, the record shows that the parties informally exchanged information, and there is no evidence to suggest that Plaintiffs were inadequately prepared for the mediations or settlement discussions.  In addition, based on the numerous briefs that have been filed in this action, the Court is persuaded that "[Plaintiffs'] counsel had a good grasp on the merits of their case before settlement talks began."  Rodriguez, 563 F.3d at 967.[14]  This factor therefore weighs in favor of the Settlement.

### 6.    The Experience and Views of Class Counsel Support Approval

In considering the adequacy of the terms of a settlement, the trial court considers the judgment of experienced counsel for the parties.  See In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should

---

[14] Moreover, since the challenges facing Plaintiffs' claims are primarily legal in nature, it is unlikely that bearing the burden and expense of engaging in discovery would have impacted the Settlement.

be given a presumption of reasonableness.")  (internal citation and quotation marks

omitted).  This reliance is predicated on the fact that "[p]arties represented by competent

counsel are better positioned than courts to produce a settlement that fairly reflects each

party's expected outcome in the litigation."  In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378

(9th Cir. 1995).

Class Counsel—Lexington Law Group and Quantum Legal LLC—opine that in light

of the risks associated with further prosecution of the action, the Settlement constitutes a

reasonable recovery that confers a substantial benefit on Settlement Class members.  Given

that Class Counsel have significant experience prosecuting class actions and handling

complex litigation, the Court accords weight to their opinion.

Collins Objectors assert that Class Counsel could not have vigorously represented

the Class, since this action has involved little motion practice or discovery.[15]  But it is

incorrect and naive to equate vigorous representation with the number of motions filed in

an action.  Although it is true that the action involved one motion to dismiss, Judge Fogel

made it abundantly clear in his ruling that the claims alleged in this case—and the basic

premise underlying them—were unlikely to succeed.  In view of the Court's patent

skepticism of the action, it would have been far from prudent to invest significant resources

in discovery, when it was apparent that the challenges facing Plaintiffs were legal in nature.

It was for that reason that Class Counsel sagely decided to focus their time and effort on

reaching a settlement with Defendants.  That aside, Collins Objectors completely ignore

that Class Counsel's prosecution of this action has resulted in numerous substantive rulings

---

[15] Much of Collins Objectors' challenge to the adequacy of the Settlement is predicated on the notion that the claims alleged in Chen—a class action lawsuit their attorneys are prosecuting in state court—are superior to those alleged in this action.  That argument misses the mark.  For purposes of Rule 23(e), the task facing this Court is to evaluate whether the Settlement is fair, reasonable and adequate.  Thus, whether or not the causes of action alleged in Chen are superior or whether the plaintiffs' counsel in that case are doing a better job simply is not germane to the Court's analysis.  That aside, the Court questions the veracity of Collins Objectors' claim, given that they failed to disclose that on January 17, 2017, the state superior court granted eBay's demurrer to Collins' First Amended Complaint, dismissing all claims. Pls.' Req. for Jud. Notice, Ex. 1, Dkt. 349-1.

1  by the Court.  The suggestion made by Collins Objectors that Class Counsel have not

2  adequately represented the Class is wholly without merit.

3      Equally misplaced is Collins Objectors' reliance on Campbell v. eBay, Inc., et al.,

4  No. C 13-2632 HSG, a putative class action filed against PayPal and eBay by the same

5  counsel representing the plaintiffs in the Chen action.  The pleadings in that action sought

6  to challenge various business practices engaged in by the defendants, including the

7  allegedly unnecessary and arbitrary placement of holds and reserves on funds of its users.

8  Collins Objectors' point to Judge Gonzales-Rogers' August 14, 2014, ruling on the

9  defendants' motion to dismiss the Third Amended Complaint.  Campbell, Dkt. 66.  In

10  particular, they attempt to make much of the Court's finding that "Plaintiff's allegations

11  concerning holds on funds implemented in an arbitrary manner is sufficient to state a claim

12  [for breach of fiduciary duty]."  Id. at 5-6.

13      Collins Objectors assert that the fact that their breach of fiduciary claim survived

14  dismissal in the Campbell action, while Class Counsel's similar claim in this action was

15  dismissed, illustrates the "legal malpractice" of  Class Counsel.  Dkt. 345 at 10.  This

16  contention has no merit.  Judge Fogel rejected Plaintiffs' breach of fiduciary claim on the

17  ground that the conduct on which said claim was predicated was permitted under the User

18  Agreement.  This Court agrees with that assessment.  The fact that another judge in a

19  different action may have reached a different conclusion while addressing a similar issue,

20  without more, is not probative of Class Counsel's competence.   In any event, Collins

21  Objectors fail to disclose that the judge in Campbell granted the defendants' motion to

22  dismiss under Rule 41(b), based on the fact that over the two and one-half year period the

23  case was pending, the plaintiff completely failed to respond to discovery requests, failed to

24  serve her Rule 26(a)(1) initial disclosures, failed to make herself available for deposition,

25  and failed to appear at a scheduled case management conference.  Id., Dkt. 121, 139.  In

26  view of such conduct, Collins Objectors complaints regarding Class Counsel ring hollow.

27      Accordingly, this factor weighs in favor of approving the Settlement.

28

7.      **The Presence of a Government Participant**

No governmental entity participated in this matter; this factor, therefore, is irrelevant to the Court's analysis.

8.      **The Reaction of Class Members**

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered.  Mandujano v. Basic Vegetable Prods. Inc., 541 F.2d 832, 837 (9th Cir. 1976).  Here, email notice was served on approximately 100 million PayPal customers, including approximately 10.5 million Claims Class members.  See Wilson Decl. ¶¶ 2-4.  In response, close to 400,000 claims have been filed. Marr Decl. ¶ 8.  Yet, only eleven class members filed objections and 75 have opted out.  Id. These numbers indicate that the notice process has been remarkably successful—and the Settlement Class's reaction to the Settlement has been overwhelmingly positive.  Given the relatively small number of objections and opt-outs, the Court finds that the reaction of the class to the settlement is positive, which favors approving the Settlement.  See Rodriguez, 563 F.3d at 967 ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections."); In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (finding that approval of settlement was warranted where "[o]nly 235 out of over 32 million Class Members have opted out, which is less than 0.01%," and where "Class Members … filed only 10 objections with specific arguments," which was "a remarkably low level of opposition….").

Collins Objectors dispute that the reaction of the Settlement Class has been positive. Dkt. 345 at 4.  They point out that only 2.8% of Claims Class members submitted a claim, which they insist shows that the Settlement was not well-received by class members.  Id. However, the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable.  E.g., Churchill Vill., 361 F.3d at 577 (holding that the district

court properly weighed the reactions of members of the proposed settlement class by taking into account that there were 45 objections and 500 opt-outs in relation to the approximately 90,000 notified class members).  Even so, taking into account the response rate, the Court finds that, on balance, the reaction of the Settlement Class is favorable.  E.g., Moore v. Verizon Commc'ns Inc., No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (approving class action settlement with 3% claim rate).

### 9.    Whether the Settlement Was the Product of Collusion

Because the parties negotiated and reached a settlement prior to formal certification of the class, the Court has a heightened responsibility to ensure that the settlement was not the product of collusion.  In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947-48 (9th Cir. 2011).  Here, each version of the Settlement, including the final version of the Settlement, as amended, resulted from negotiations overseen by independent and experienced mediators—two of whom are former judges.  This fact weighs in favor of a finding of non-collusion.  See id. at 948 (holding that the use of a "neutral mediator" is "a factor weighing in favor of a finding of non-collusiveness").

Miorelli argues that the parties' collusiveness is demonstrated by the fact that the Court failed to preliminarily approve the two prior settlement proposals.  Dkt. 333 at 10. Nonsense.  The mere fact that the Court found deficiencies in the prior settlement proposals is not probative of whether the parties engaged in collusive behavior in connection with the prior or *instant* Settlement.  To the contrary, the fact that the parties revised the settlement in a manner that adequately addressed the Court's concerns with respect to the prior settlement proposal suggests the opposite.  The Court therefore rejects Miorelli's unsupported assertion that the Settlement was the product of collusion between the parties.

//

//

//

//

//

10.     **Conclusion**

On balance, the Court concludes that the relevant <u>Churchill</u> factors weigh in favor of a finding that the settlement is fair, reasonable and adequate.[16]

C.     **OBJECTIONS**

1.     **Miorelli**

Miorelli contends that: (1) the Settlement's monetary relief is inadequate; (2) the Settlement is the result of "collusion" between Class Counsel and Defendants; (3) the Settlement's injunctive relief is "illusory"; and (4) the attorneys' fees sought by Class Counsel are improperly calculated.  Dkt. 33.  The first three objections have been addressed in the Court's analysis of the <u>Churchill</u> factors, while the fourth objection will be addressed in the section below pertaining to the motions for attorneys' fees.  For the reasons stated in each of those sections, Miorelli's objections to the Settlement are OVERRULED.

2.     **Collins Objectors**

Collins Objectors contend that: (1) the Settlement does not provide sufficient relief to the Class; (2) certification of an injunctive relief class and claims class is improper; and (3) Class Counsel are inadequate because no formal discovery was conducted.[17]   Dkt. 316.  The first and third objections are discussed above in the context of the <u>Churchill</u> factors, while the second objection is discussed below.  For the reasons stated in each of those sections, all objections are OVERRULED.

---

[16] No objections have been interposed regarding the designation of EFF as the cy pres recipient, and the Court finds that EFF satisfies the requirements for approval set forth in <u>Dennis v. Kellogg Co.</u>, 697 F.3d 858, 865 (9th Cir. 2012) (holding that there must be "a driving nexus between the plaintiff class and the cy pres beneficiaries" and that the cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,... and must not benefit a group too remote from the plaintiff class").

[17] On January 27, 2017, Collins Objectors filed a "Reply to the Opposition of Class Counsel to the Objections of Class Members Walley Collins and Lucindia Christian to Settlement Agreement Pending Final Approval in this Court."  Dkt. 345.  That brief is not authorized under the scheduling order governing Plaintiffs' motion for final approval.  Dkt. 329.  To the extent that Collins Objectors believed they were permitted to respond to Plaintiffs' "motion," a response would have been due long ago on November 28, 2016.  Civ. L.R. 7-3(a).  Notwithstanding this flagrant violation, the Court, in the interest of expediting resolution of the instant motions, will consider Collins Objectors' reply.

Collins Objectors argue that the SAC seeks monetary relief that is not incidental to the requested injunctive relief such that certification of a Rule 23(b)(2) injunctive relief class was inappropriate.  Dkt. 316 at 22-23.  Claims for monetary relief may not be certified under (b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360 (2011).  The error in this argument is that it neglects to consider that the Court may properly certify Plaintiffs claim for injunctive relief under (b)(2) and their claim for monetary relief under (b)(3).  See Ebert v. Gen. Mills, Inc., 823 F.3d 472, 480 (8th Cir. 2016) ("The use of ... hybrid certification, insulating the (b)(2) class from the money-damages portion of the case, is an available approach that is gaining ground in class action suits."); Eubanks v. Billington, 110 F.3d 87, 96 (D.C. Cir. 1997) (noting that when a "(b)(2) class seeks monetary and injunctive relief," the court can certify "a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief"); Ellis v. Costco Wholesale Corp., 285 F.R.D. 492, 535-544 (N.D. Cal. 2012) (certifying injunctive relief class under 23(b)(2) and monetary relief class under 23(b)(3)).

Collins Objectors' reliance on Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1240 (9th Cir. 2003), is misplaced.  In that case, a single class, which included both claims for monetary relief and claims for injunctive relief, was certified under Rule 23(b)(2) on a non-opt out basis.  In cases where both monetary and injunctive claims are certified on a non-opt out basis under Rule 23(b)(2), the court held that due process proscribes the case from being "wholly or predominately for money judgments."  Id.  In contrast, here, there are no due process concerns because, unlike Linney, class members with claims for monetary relief have been given an opportunity to opt out of the Claims Class.  Accordingly, the Court finds no merit to Collins Objectors' concerns regarding the Court's certification of a Settlement Class.

### 3.    Perkins

Perkins argues that the Settlement should be rejected because:  (1) the release improperly includes parens patriae claims; (2) the definitions of the classes in the

1    Settlement do not specifically exclude Defendants; and (3) the attorneys' fees sought are

2    too high.  Dkt. 317.  The first two objections are discussed below, while the third objection

3    is addressed in the section pertaining to the motions for attorneys' fees.  For the reasons

4    stated in each of those sections, Perkins objections to the Settlement are OVERRULED.

a)    ***Parens Patriae Claims***

6    Under the parens patriae doctrine, the State may bring an action to protect its "quasi-

7    sovereign interest in the health and well-being-both physical and economic-of its residents

8    in general."  Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 607

9    (1982) (internal quotations and citation omitted).  For purposes of standing to bring a

10   parens patriae claim, the State must meet the requirements for Article III standing and

11   "articulate an interest apart from the interests of particular private parties, i.e., the State

12   must be more than a nominal party."  Id.

13   Perkins contends that the Settlement release is unfair to Settlement Class members to

14   the extent it releases parens patriae claims held by the State.  Dkt. 317 at 2.[18]  However, the

15   Settlement does not require the State to release any parens patriae claims—nor would such

16   an interpretation of the Settlement make any logical sense.  The only claims being released

17   are those held by class members.  See In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales

18   Practices Litig., 263 F.R.D. 226, 241 (E.D. Pa. 2009).  Since class members do not possess

19   the State's parens patriae powers, it is axiomatic that they cannot release such claims.

20   Rather, the Settlement only specifies that class members release their individual claims,

21   which includes their right to recover in a subsequent parens patriae action if one is brought

22   by the State.  The Court therefore rejects Perkins' contention that the release is improper.

b)    ***Exclusion of Defendants***

24   Perkins next complains that the Settlement is "unfair and unreasonable" by not

25   precluding Defendants or their representatives from submitting a claim under the

27          [18] The Settlement defines "Released Claims" as including claims that have been "or
could be asserted in any individual, class, private attorney general, representative, parens
28   patriae or any other capacity …."  Settlement § 1.29.

Settlement.  Dkt. 317 at 3.  Since Defendants are funding the Settlement, it is unlikely that either of them will submit a claim.  As for Defendants' representative and employees, Perkins cites no authority or reasoned argument demonstrating why the failure to exclude them renders the Settlement unfair.

### 4. Guess

Guess, acting pro se, states that a hold was placed on his account after the close of the Claims Class Period on November 5, 2015.  Dkt. No. 292.  He contends that the Claims Class should not be limited to any particular time period and should instead include all PayPal members who at any time in the past or the future had or have a hold or reserve placed on their accounts.  Id.  Since the hold Guess complains of was imposed outside the Class Period, he is not a member of the Claims Class and has no standing to object.  See In re Equity Funding Corp. of Am. Sec. Litig., 603 F.2d 1353, 1360-61 (9th Cir. 1979) (an objector who is not a class member "lacks standing to object").

Standing issues aside, the substance of Guess' objection lacks merit.  The Court has previously determined that the Class Period is appropriately tailored to the scope of Plaintiffs' claims in the Third Amended Complaint, which are constrained by the four-year statute of limitations running from the filing of the Fernando action on April 19, 2010.  Dkt. No. 281.  Moreover, terminating the Claims Class period on the date of the Court's preliminary approval order is reasonable and necessary in order to allow the claims administration process to take place prior to final approval. The Class Period simply cannot extend indefinitely into the future.[19]  Guess's objections to the Settlement are OVERRULED.

### 5. Other Objections

Objectors Greene, Phillips, Leach, Schroeder and DeBellis submitted pro se objections to the Settlement.  Dkt. 293, 294, 303, 317, 337, 338, 339.  Their objections are

---

[19] Guess should be aware that because he is not covered by the Settlement, he likewise is not releasing any claims thereunder and has the option of seeking relief based on the hold.  See Settlement Agt ¶¶ 1.29 & 7.1.

1   entirely conclusory and lack citations to legal authority or evidence.  They also fail to

2   identify any specific flaws in the Settlement that render it unfair, inadequate or

3   unreasonable.

4   Greene and Phillips do not address any particular term in the Settlement, and instead

5   appear to assert more generalized grievances with PayPal and/or class action litigation.

6   Dkt. 303, 337.

7   Phillips likewise fails to identify any particular issue regarding the Settlement, but

8   instead appears to question whether a hold was placed on his PayPal account.  Dkt. No.

9   315.

10  Schroeder and DeBellis express frustration with holds that were allegedly placed on

11  their PayPal accounts, and make vague complaints that the relief provided by the

12  Settlement is insufficient.  Dkt. 294, 315.  However, both fail to identify any specific reason

13  they believe the Settlement's terms do not adequately compensate class members,

14  especially considering the significant risk they would receive nothing if the case went to

15  trial.

16  The objections filed by Greene, Phillips, Leach, Schroeder and DeBellis are

17  OVERRULED.

18  **D.  CERTIFICATION OF SETTLEMENT CLASS**

19  In its Order Granting Plaintiffs' Motion for Preliminary Approval of Amended Class

20  Action Settlement Agreement, Dkt. 281, the Court carefully considered whether Plaintiffs

21  satisfied the Rule 23(a) and (b)(2) and (3) requirements.  Dkt. 281 at 9-14.  "Because the

22  Settlement Class has not changed, the Court sees no reason to revisit the analysis of Rule

23  23." G. F. v. Contra Costa Cty., No. 13-CV-03667-MEJ, 2015 WL 7571789, at *11 (N.D.

24  Cal. Nov. 25, 2015) (N.D. Cal. Nov. 25, 2015) (internal quotation marks and citation

25  omitted).

26  //

27  //

28  //

## III.    ATTORNEYS' FEES, COSTS AND SERVICE AWARDS

### A.    BACKGROUND

The Settlement authorizes Class Counsel to request an award of attorneys' fees, costs and service awards (also referred to as "incentive awards") for each of the eight named plaintiffs in Zepeda "in an amount of up to 30% of the Settlement Fund … with all amounts paid exclusively from the Settlement Fund."  Settlement Agt. §§ 6.1, 1.34.  Based on a Settlement Fund of $3,200,000, the maximum amount that can be awarded for attorneys' fees, costs and incentive awards collectively is $960,000.  The Settlement also authorizes plaintiffs' counsel in the Fernando action (namely Trubitsky and local counsel Hicks) to file separate fee and cost applications for an aggregate amount of up to $212,500. Id.[20]  Any sums awarded to the Fernando counsel are to be "paid out of the total award of fees and costs awarded to Class Counsel."  Id.  The Settlement specifies that the amount of fees, costs and incentive awards is at the discretion of the Court "and the amount of any award is not a condition of [the] Settlement."  Id. § 6.2.

A total of three fee applications have been submitted for the Court's consideration. Dkt. 295, 296, 297.  Class Counsel seeks payment of $902,000 in attorneys' fees, costs in the amount of $38,463.29, and incentive (service) awards totaling $20,000 ($2,500 for each of the named plaintiffs in Zepeda) for a grand total of $960,000—the maximum amount that can be awarded under the Settlement.  See Settlement Agt. § 6.1. Trubitsky, ostensibly on behalf of herself and Hicks, seeks recovery of $212,500 in attorneys' fees, also the maximum amount permitted under the Settlement.  See id.[21]  Due to his acrimonious

---

[20] The original global settlement reached in December 2011 specified that Defendants would contribute an additional $425,000 to the Settlement Fund established in the May 2011 settlement in Zepeda.  Hicks Decl. Ex. D, Dkt. 295-2 at 18.  The settlement term sheet also indicated that Fernando counsel could seek recovery of up to 50% of the additional settlement (i.e., $212,500).  Id. at 19.  Due to Trubitsky's refusal to honor the December 2011 settlement, it was never reduced to a formal settlement agreement.

[21] At the hearing on the instant motions, Hicks stated that Trubitsky filed her fee motion with his name on the caption without his prior knowledge or consent.  See also Hicks Decl. ¶ 14 ("The Court may not be aware that on occasion [Trubitsky] filed documents bearing my name without my advance knowledge, review and consent, though that was clearly by agreement to serve as local counsel.")

relationship with Trubitsky, Hicks filed a separate fee application.  The Court analyzes these requests below, beginning first with Class Counsel's request for an incentive award for each of the eight Class Representatives in the <u>Zepeda</u> action.

## B.   INCENTIVE AWARDS

"Incentive awards are fairly typical in class action cases," <u>Rodriquez</u>, 563 F.3d at 958-59, but the decision to approve and the amount of such awards are matters within the court's discretion, <u>Mego</u>, 213 F.3d at 463.  Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." <u>Rodriquez</u>, 564 F.3d at 958-59.  In assessing an incentive award request, the court must consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions ... [and] the amount of time and effort the plaintiff expended in pursuing the litigation." <u>Staton v. Boeing Co.</u>, 327 F.3d 928, 977 (9th Cir. 2003).  The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards." <u>Radcliffe v. Experian Info. Solutions, Inc.</u>, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted).

Plaintiffs seek an incentive award in the amount of $2,500 for each of the eight named Class Representatives.  Although the Court, in its Order granting preliminary approval of the Settlement, specifically instructed Plaintiffs to "include a discussion based on [<u>Staton</u>]" with their motion for incentive awards, Dkt. 281 at 9, no such analysis or supporting evidence has been provided.  Instead, Plaintiffs merely state that "Plaintiffs consulted with Class Counsel throughout the six year history of this case, made themselves available as needed, provided factual background to assist in the development of the case, reviewed pleadings and correspondence in the case, and evaluated the settlement papers and terms." Dkt. 297 at 26.  This generic, unsupported assertion could be made in any class action.  That aside, the proposed $2,500 incentive award is otherwise wholly disproportionate relative to the recovery of other class members, which is estimated to be

approximately $3 per claimant.  Dkt. 344 at 4.  For these reasons, the Court finds that a $50, as opposed to a $2,500 incentive award, is reasonable and appropriate.  E.g. Russell v. United States, No. C 09-03239 WHA, 2013 WL 3988778, at *4-5 (N.D. Cal. Aug. 2, 2013) (reducing requests for $5,000 and $2,000 incentive awards to $200 and $100, respectively, where each class member was likely to receive approximately $36).  Accordingly, Plaintiffs' request for an incentive award is GRANTED in the amount of $50 per Plaintiff.

### C.   ATTORNEYS' FEES

In cases such as this where the settlement of a class action creates a common fund, the Court has discretion to award attorneys' fees using either (1) the "lodestar" method or (2) the "percentage of the fund" approach.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the lodestar method, the lodestar amount is calculated by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Hanlon, 150 F.3d at 1029.  "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."  In re Bluetooth Headset, 654 F.3d at 941.  Under the percentage of the fund method, the attorneys' fees are calculated as a percentage of the common fund established by the settlement.  Id.  This approach is permissible in common fund settlements "[b]ecause the benefit to the class is easily quantified in common-fund settlements…."  Id.  In this Circuit, 25% is the "benchmark" for a reasonable fee award, though a court may depart from the benchmark where "special circumstances" are present.  Id. at 942.

To assess whether a fee request is reasonable, the Court may consider a number of factors, including, without limitation: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.  Vizcaino, 290 F.3d at 1048-50.  "The overall result and benefit to the class from the litigation is the

most critical factor in granting a fee award."  In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  Courts applying the percentage method should use the lodestar method as a cross-check to determine the fairness of the award.  See Vizcaino, 290 F.3d at 1050.  However, regardless of the methodology employed, the Court must ensure that the fee award is reasonable.  In re Mercury Interactive Sec. Litig., 618 F.3d 988, 992 (9th Cir. 2010).

### 1. Amount of Fees to be Awarded

Class Counsel's request for $902,000 in fees correlates to approximately 28% of the Settlement Fund, which is above the 25% benchmark.  Weighing the relevant factors, the Court finds that a benchmark fee, as opposed to the requested enhanced fee, is appropriate.  As a threshold matter, Class Counsel achieved a reasonable settlement on behalf of class members.  The settlement amount and matrix for the payment of claims were based on an analysis of the amount of interest that would have accrued on accounts subject to holds during the Class Period.  McCabe Decl. ¶ 2.  Though certain Objectors assert that the settlement is too low, they fail to support their arguments with any evidence or meaningful analysis.  Objectors also fail to consider the risks facing the Class in the absence of a settlement, which are especially significant considering the questionable merit of Plaintiffs' claims and the risk that no class would be certified.  While the results achieved by Class Counsel may not be sufficiently exceptional to warrant an enhanced fee, they are more than adequate to support a benchmark fee award.

The remaining factors also militate in favor a Class Counsel fee award.  First, for the same reasons just mentioned, Class Counsel assumed substantial risk in representing the Class.

Second, Class Counsel have consistently demonstrated both skill and expertise in their pursuit of this case.  Class Counsel specialize in consumer class actions, and have served as counsel for classes of plaintiffs in a variety of substantive areas.  Leon Decl. ¶ 2, Dkt. 297-3; Todzo Decl., ¶¶ 2, 6-12, Dkt. 297-1.  Such expertise proved particularly beneficial in this action, in view of the substantive and procedural complexities involved in

1   litigation and the protracted settlement process.  Given the contentious nature of the action,

2   the Court finds that the result achieved in this matter would have been unlikely if entrusted

3   to counsel of lesser experience or capability.

4        Third, Class Counsel represented Plaintiffs on a contingency basis and thus bore the

5   financial burden of pursuing the litigation for an extended period of time.  See Vizcaino,

6   290 F.3d at 1050 (noting that the burdens imposed on counsel by taking the case on a

7   contingency basis were shown by the extended length duration of the lawsuit, the

8   significant cost, and the fact that plaintiff's counsel had to forego other work).

9        Finally, fee awards in other consumer class actions support the conclusion that a fee

10   award based on 25% of the Settlement Fund is reasonable and appropriate.  See Ko, 2012

11   WL 3945541, at *14.

12        Finally, the reasonableness of the fee award is supported by a lodestar cross-check

13   analysis.[22]  The Court therefore concludes that a fee award based on 25% of the Settlement

14   is consistent with the Ninth Circuit's benchmark and is supported by the facts of this case.

15              **2.      Allocation of Fees**

16        The next issue before the Court concerns the allocation of fees between Class

17   Counsel and Fernando counsel.  The salient question in determining whether a fee award is

18   appropriate is whether the work performed by counsel "'was both useful and of a type

19   ordinarily necessary to advance the ... litigation.'"  Armstrong v. Davis, 318 F.3d 965, 971

20   (9th Cir. 2003) (quoting in part Webb v. Bd. of Educ., 471 U.S. 234, 243 (1985))

21   (alterations in orig.); e.g., Fischel v. Equitable Life Assur. Soc'y of U.S., 307 F.3d 997,

22   1006 (9th Cir. 2002) ("When counsel recover a common fund which confers a 'substantial

23   benefit' upon a class of beneficiaries, they are entitled to recover their attorney's fees from

24   the fund."); Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 87 (2d

25   Cir. 2010) (holding that district court has discretion to award attorneys' fees to co-counsel

26   whose work "confer[s] substantial benefits on the class").

27

28        [22] The lodestar for Class Counsel's work in this case is $1,015,233.50, which
exceeds the amount of fees to be awarded under the percentage of the fund approach.

1    With regard to Class Counsel, the Court finds that they have comported themselves

2 professionally and in a manner that proved useful for and advanced the interests of the

3 Class.  Despite the ongoing efforts of Trubitsky and various putative interveners to

4 undermine their efforts to consummate a global settlement, Class Counsel persevered and

5 participated in several multi-day mediations to finally reach a settlement acceptable to the

6 Court.  In the face of these impediments, coupled with the Court's rejection of prior

7 iterations of the Settlement, Class Counsel remained steadfast in their attempts to pursue

8 settlement in this action.  Ultimately, Class Counsel conferred a substantial benefit upon the

9 Class by securing a settlement in an action where the substantive merit and the ability to

10 obtain and maintain class certification remain questionable.  The Court therefore finds that

11 Class Counsel have persuasively demonstrated that they should be awarded attorneys' fees

12 in this action.

13    The Court is not so sanguine as to <u>Fernando</u> counsel.  The Settlement now before the

14 Court was negotiated without either Trubitsky or Hicks' participation and was never signed

15 by either of them or any of the <u>Fernando</u> plaintiffs.  Todzo Decl. in Supp. of Class Pls.'

16 Opp'n to Mot for Attorneys' Fees and Reimbursement of Costs by <u>Fernando</u> Counsel ¶ 2,

17 Dkt. 301-1.  It is true that <u>Fernando</u> counsel were instrumental in securing Defendants'

18 agreement in December 2011 to pay an additional $425,000 into the Settlement Fund to

19 resolve the <u>Fernando</u> plaintiffs' claims.  Yet, Trubitsky almost immediately reneged on that

20 agreement—instead demanding individual settlements for certain of her clients.  <u>See, e.g.</u>,

21 Moon Decl. ¶¶ 2-5; 3/29/12 CMC Stmt. at 6-7; 11/27/12 Order at 2.  In addition, once it

22 became clear that the parties in <u>Zepeda</u> were intending to pursue a global resolution

23 irrespective of her involvement, Trubitsky embarked on a course of action directed at

24 disrupting the settlement by, among other things, engaging in unnecessary motion practice

25 and initiating a new lawsuit.  <u>See id.</u>[23]  These actions resulted in additional delay and

26

27 ───────────────────────

[23] In addition, Hicks reports that Trubitsky ignored his advice and repeatedly refused
to communicate with his or the class representatives.  <u>See</u> Hicks Decl. in Supp. of Appl. for

28 Fees by Attorney David Hicks ¶¶ 14-15, Dkt. 295-2.

litigation costs—all to the detriment of the Class.  Thus, as to Trubitsky, the Court finds that she is not deserving of attorneys' fees or costs on the ground that her actions, on balance, did not provide a substantial benefit to the Class.[24]

The matter of Hicks' fee request presents a closer question.  There is no allegation or evidence that Hicks was directly responsible for Trubitsky's decision to renege on the settlement or impede the Zepeda plaintiffs' efforts to obtain judicial approval of the global settlement.  To the contrary, the record shows that Trubitsky inappropriately took actions, such as filing the Dunkel action and listing Hicks as co-counsel, without his knowledge or consent.  At the same time, Hicks cannot completely absolve himself of Trubitsky's actions.  To the extent that Hicks believed that Trubitsky's conduct was detrimental to their clients or to the Class, or was inconsistent with the obligations imposed on pro hac vice counsel, it was incumbent upon him to notify the Court that she was in violation of the rules of professional conduct applicable to pro hac vice counsel.  See Civ. N.D. Cal. Civ. L.R. 11-4.  Yet, there is no indication that Hicks endeavored to seek judicial intervention to address her actions or was able to ameliorate the impact of her misconduct.

The above notwithstanding, there is no evidence that Hicks, unlike Trubitsky, took any actions that were detrimental to the Fernando plaintiffs or the Class.  To the contrary, he provided a substantial benefit to the Class by helping negotiate an additional $425,000 for the Settlement Fund.  The Court therefore finds that it is fair and reasonable to award fees to Hicks for the services he performed up to and including the mediation in December 2011.  The billing records submitted by Hicks reveal that he performed 52.7 hours of work during that time period.  See Hicks Decl. Ex. B, Dkt. 295-3 at 3-29.  Based on a generous

---

[24] Trubitsky's deficient representation of the Class also is underscored by the fact that she failed to appear for the fairness hearing.  Instead, the evening before the hearing, Trubitsky requested attorney Tour-Sarkissian to "specially appear" in her stead.  Tour-Sarkissian, who is not counsel of record or otherwise involved in Fernando or Zepeda, acknowledged that she was generally unaware of the facts and history of the actions and only had the opportunity to review a limited portion of the present motion papers.  As such, through no fault of her own, Tour-Sarkissian could not meaningfully participate in the hearing.

hourly rate of $660.00 per hour, the lodestar for Hicks' services amounts to $34,782. Said amount shall be awarded to Hicks as attorneys' fees.

### 3. Miorelli's Objections

Miorelli contends that the Class Counsel should only be awarded the 25% of the "net value" of the Settlement Fund after subtracting the notice costs, litigation costs and incentive awards. Dkt No. 333 at 13-17. However, there is no bright-line rule requiring that a court calculate a fee award based on a net settlement fund. See In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 953 (9th Cir. 2015) ("[W]hether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.").

Miorelli next argues that the lack of biographical information for all attorneys who appear on the billing statements submitted to the Court make it "impossible" to ascertain whether the lodestar is reasonable. Dkt. 333 at 16. No authority is cited to support Miorelli's contention that the presentation of attorney biographies or resumes is a prerequisite to a fee request in a class action settlement. That aside, Class Counsel have submitted uncontroverted declarations substantiating the qualifications of the primary billers, the hours worked on the case, and that their hourly rates are commensurate with the prevailing rates in the San Francisco Bay Area. See Todzo Decl. ¶¶ 7-12, Dkt. No. 297-1; Leon Decl. ¶¶ 2, 6-9, Dkt. 297-3.[25] Although Class Counsel did not submit biographical for *every* legal professional who billed time to this case, see Dkt. 333 at 16 & n.3, the lack of such information is inapt, given that the amounts billed by those individuals was negligible.[26] The Court therefore finds that Class Counsel has provided sufficient information to perform a lodestar cross-check.

---

[25] Each of those attorneys attended well-known law schools, such as Hastings College of the Law and Boalt Hall School of Law. Todzo Decl. ¶¶ 8-9. Lead attorneys Mark Todzo and Jeffrey Leon have practiced law for over twenty-two and twenty-four years, respectively, and have worked on numerous class actions. Id. ¶ 8; Leon Decl. ¶ 8.

[26] For instance, Miorelli complains that Class Counsel did not submit a resume for Abigail Blodgett, who billed 0.2 hours (12 minutes) at $400, which amounts to $80 in fees. Dkt. 333 at 16 n.3.

Finally, Miorelli contends that the Court should apply the District of Columbia's "Laffey matrix" to determine Class Counsel's hourly rate.  Dkt. No. 333 at 16-17.  "[T]he Laffey matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C."  Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010).  But as the Ninth Circuit in Prison Legal News has explained, "just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away."  Id.  Accordingly, this Court has previously "decline[d]" an invitation to use the matrix where, as here, the party requesting fees "has submitted competent evidence showing market rates in this area (including those awarded by courts)."  Rosenfeld v. U.S. Dep't of Justice, 904 F. Supp. 2d 988, 1003 (N.D. Cal. 2012) (declining to apply the Laffey matrix where the movant submitted competent evidence showing market rates in local area); see also Jacobson v. Persolve, LLC, No. 14-CV-00735-LHK, 2016 WL 7230873, at *6 (N.D. Cal. Dec. 14, 2016) (rejecting Laffey matrix).[27]

### 4.   Perkins' Objections

Perkins asserts that Class Counsel's ability to recover fees is governed by California Code of Civil Procedure § 1021.5.  Citing California authority, Perkins states that § 1021.5 "requires a lodestar analysis and does not provide for any recovery based on a percentage of a common fund."  Dkt. 317 at 4.  Perkins apparently is unaware that Class Counsel's fee request is governed by *federal* law, which expressly confers federal courts with the discretion to determine fee awards in a class action based on either the lodestar method or a percentage of the settlement fund.  In re Bluetooth, 654 F.3d at 942.  Perkins also claims Class Counsel is "not entitled to any fee multiplier."  Dkt. 317 at 4.  This argument is perplexing, given that Class Counsel has not requested application of a multiplier.  To the

---

[27] Miorelli also contends that the incentive awards are disproportionately high to the recovery of class members.  See Dkt. 333 at 11.  Miorelli's analysis is unhelpful because it ignores the Ninth Circuit's decision in Staton, which articulates the standard for evaluating incentive award requests.  That aside, his concerns are moot, as the Court has independently lowered the incentive awards.

contrary, the fees requested by Class Counsel under the percentage of the fund approach are *less than* the lodestar—which is tantamount to a *negative* multiplier.

### 5. Conclusion

To summarize, the Class Counsel Fee Motion and Hicks Fee Application are GRANTED IN PART.  Class Counsel is awarded attorneys' fees in the amount of $800,000, which represents 25% of the Settlement Fund (i.e., $3,200,000 x 25% = $800,000).  Hicks is awarded attorneys' fees in the amount of $34,782, which shall be deducted from the fees awarded to Class Counsel.  The Trubitsky Fee Motion is DENIED.

### D. COSTS

Class Counsel requests an award of costs of $38,463.29.  See Leon Decl. ¶ 10, Dkt. 297-3; Todzo Decl. ¶ 13, Dkt. 297-1.  This amount is comprised of $33,625.29 incurred by Quantum Legal LLC and $4,838 incurred by Lexington Law Group.  Id.  The majority of those Class Counsel's expenses (i.e., $19,200) are attributable to mediation fees.  Todzo Decl. Ex. 3, Dkt. 297-6.  The remaining $19,263.29 is attributable to court fees, computerized research costs, mediation fees, photocopying, postage, telephone and facsimile charges and travel expenses.  Leon Decl. Ex. 3; Todzo Decl. Ex. 1.

Attorneys are entitled "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994); Alvarado v. Nederend, No. 1:08-CV-01099 OWW DL, 2011 WL 1883188, at *10 (E.D. Cal. May 17, 2011) (noting that "filing fees, mediator fees, ground transportation, copy charges, computer research, and database expert fees … are routinely reimbursed in these types of cases") (citation omitted).  Class Counsel's request for reimbursement of costs in the amount of $38,463.29 is GRANTED.

//

//

//

//

//

**IV.    <u>CONCLUSION</u>**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      The definitions and provisions of the Settlement Agreement are hereby incorporated as though fully set forth herein. For purposes of this Order, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

2.      The Court has jurisdiction over the subject matter of the Settlement Agreement with respect to all parties to thereto, including all members of the Settlement Class.

3.      Plaintiffs' Motion for Final Approval of Amended Class Action Settlement Agreement is GRANTED.  The Court finds that the Settlement is fair, adequate, and reasonable and is in the best interest of the Settlement Class.

4.      Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement for Costs and Service Awards is GRANTED IN PART.  Class Counsel is awarded attorneys' fees in the amount of $800,000, plus costs in the sum of $38,463.29.  Plaintiffs Moises Zepeda, Michael Spear, Ronya Osman, Brian Pattee, Casey Ching, Denae Zamora, Michael Lavanga and Gary Miller are each awarded an incentive award in the amount of $50.00.

5.      The Hicks Fee Application is GRANTED IN PART.  Hicks is awarded attorneys' fees in the amount of $34,782, with said amount to be paid out of the total award of fees and costs awarded to Class Counsel.

6.      The Trubitsky Fee Motion is DENIED.

7.      Melanie Catanese's request for a two week extension to file a claim is GRANTED.  Epiq shall notify Catenese that the Court has granted her request for extension.

8.      This Court dismisses the instant action and <u>Fernando v. PayPal</u>, No. 10-1668 SBA, with prejudice as to all Settlement Class Members, consistent with the Released Claims identified in the Settlement.  Plaintiffs and each Settlement Class Member will be

deemed to have fully released and forever discharged Defendants in accordance with the Settlement

9.      Pursuant to Federal Rule of Civil Procedure 58, judgment shall be entered in accordance with this Order and the terms of the Settlement.

10.      The Court shall retain exclusive and continuing jurisdiction over this action and the parties, including Class Members, for the purposes of compliance with and performance of the Settlement Agreement.

11.      This Order shall be filed in Case Nos. C 10-2500 SBA and C 10-1668 SBA, and both files shall be closed and all pending matters therein shall be terminated.

IT IS SO ORDERED.

Dated:  3/24/17

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge